UNITED STATES, Appellee,

v.

Robert A. MORRISON, Defendant–
Appellant.

No. 94–1288.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1994.

Decided Feb. 3, 1995.

Owen S. Walker, Federal Defender Office,
Boston, MA, for appellant.

David J. Apfel, Asst. U.S. Atty., with
whom Donald K. Stern, U.S. Atty., Boston,
MA, was on brief, for appellee.

Before CYR and STAHL, Circuit Judges,
and DiCLERICO,* District Judge.

DiCLERICO, District Judge.

Defendant-appellant Robert A. Morrison
challenges the sentence imposed following his

* Of the District of New Hampshire, sitting by    designation.

guilty plea to robbery charges. Morrison does not dispute that the sentence is within the Guideline Sentencing Range ("GSR") required under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). He claims, however, that the court mistakenly believed it lacked authority to depart below the GSR and seeks a remand for a new sentencing hearing. We dismiss the appeal for lack of appellate jurisdiction.

# I

## BACKGROUND

On December 2, 1993, Morrison pled guilty to a one-count indictment charging him with robbery of Somerset Savings Bank in Somerville, Massachusetts, in violation of 18 U.S.C. § 2113(a). This was not Morrison's first offense. Morrison began his criminal career at age seventeen with a shoplifting charge that was dismissed upon payment of restitution. Soon thereafter he was implicated in two minor cases that terminated in dismissals. Prior to the Somerville robbery, his criminal record included (1) a 1980 conviction for masked armed robbery of a Bedford, Massachusetts, bank; (2) a 1982 conviction for a December 1981 larceny; (3) a 1983 conviction for possession of stolen mail; (4) a 1992 larceny-from-the-person conviction stemming from a 1991 holdup of a CVS drugstore in Yarmouth, Massachusetts; and (5) a 1992 charge [1] that he robbed a Mobil gas station and mini-mart in New Hampshire.[2] In addition, following the Somerville robbery, Morrison pled guilty to a felon-in-possession charge.[3] Morrison has a history of alcohol abuse and depression reaching back as far as his first criminal offense.

The presentence report ("PSR") concluded that Morrison, by reason of his previous convictions for the 1980 armed robbery and the 1991 larceny from the person, was a career offender.[4] The PSR calculated an offense level of 32, minus three points for acceptance of responsibility, for a total offense level of 29; and a criminal history category of VI. A GSR of 151–188 months resulted. Neither party objected to the PSR findings.

On February 16, 1994, Morrison filed a "Sentencing Memorandum and Request for Downward Departure" ("sentencing memorandum") seeking relief from the GSR pursuant to U.S.S.G. § 4A1.3 [5] and Ch. I, Pt. A, intro. comment. (4)(b) [6]. Morrison took the

1. At the time of sentencing, the charge was pending.

2. During the period between 1980 and 1992, Morrison spent significant time in prison. He was initially given probation for the 1980 masked armed robbery conviction. That probation was revoked and Morrison was incarcerated from December 16, 1983, until he was paroled on December 11, 1984. His parole terminated in December 1991. He also was imprisoned from January 10, 1992, to July 27, 1992, for the larceny-from-the-person conviction.

3. Morrison allegedly robbed a convenience store in Spokane, Washington, on September 11, 1992, just three days after the Somerville robbery. After he was arrested, the police found a sawed-off .22 caliber Ruger rifle and a box of .22 caliber bullets in his hotel room. He was charged as a felon in possession.

4. See 28 U.S.C. § 994(h) (defendant is career offender if, inter alia, convicted of crime of violence after having been convicted of two or more felonies which were crimes of violence); see also U.S.S.G § 4B1.1 (same).

5. Morrison cited to the portion of the Guidelines section that states:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.
> U.S.S.G. § 4A1.3.

6. The Guidelines introduction notes that

> [t]he sentencing statute permits a court to depart from a guideline-specified sentence only when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken in to consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each

position that U.S.S.G. § 4A1.3 authorizes sentencing courts to consider departures in limited circumstances where "reliable information indicates that the history category does not adequately reflect the seriousness of the defendant's criminal history." *See* U.S.S.G. § 4A1.3. Morrison argued that the criminal history category calculated in the PSR significantly overrepresented his criminal history and the likelihood that he would commit further crimes because he was not a typical career offender. The First Circuit has not yet determined whether departures are prohibited in career offender cases. *See United States v. Norflett,* 922 F.2d 50, 54 n. 5 (1st Cir.1990).

To establish that the circumstances of his case were atypical, Morrison argued that the Somerville robbery (the crime of conviction) and the 1991 larceny from the person (his second predicate offense) should be merged because they were symptoms of a "downward spiral" in his life manifested by heavy drinking and suicidal thoughts that began following the loss of his job in 1990. Morrison noted that following a year of imprisonment in 1984, he had "become a productive member of society, attending college, working in Colorado, and then working at MCI Communications." However, by summer 1991, he had left MCI, was "deeply disturbed" and had been hospitalized on several occasions for his drinking problems. Morrison listed several events that contributed to his "downward spiral," including two suicide attempts for which he was hospitalized during the summer of 1991; two weeks spent in detoxification in September 1991; hospitalization for depression and alcohol problems from October 25 to November 15, 1991; the December 11, 1991, robbery of the Yarmouth CVS and the sentence served for the offense; a subsequent move to Canada where he drank heavily and again attempted suicide; hospitalization in Nashua, New Hampshire, on September 2, 1992; a gas station robbery on September 7, 1992, for which charges were pending against him; and the September 8, 1992, Somerville robbery. Morrison also set forth

how, following the Somerville robbery, he obtained a book on how to commit suicide, flew to Spokane, Washington, and purchased a rifle with the intention of killing himself.

Morrison attached a psychological evaluation by Robert S. Ebert to his sentencing memorandum. In his evaluation, Dr. Ebert diagnosed Morrison as suffering from "longstanding and chronic depression." According to Dr. Ebert, "Morrison's most recent criminal activities (as well as many of those in the past) [apparently were] carried out in the context of a chronic depression and severe alcoholism."

To support his contention that the court had authority to depart in career offender cases, Morrison cited several other circuit opinions addressing the issue and holding that the policy statement found in U.S.S.G. § 4A1.3 permits downward departure. *See, e.g., United States v. Bowser,* 941 F.2d 1019 (10th Cir.1991); *United States v. Pinckney,* 938 F.2d 519 (4th Cir.1991); *United States v. Lawrence,* 916 F.2d 553, 554–55 (9th Cir. 1990); *United States v. Brown,* 903 F.2d 540 (8th Cir.1990).

At his sentencing hearing, Morrison again argued the facts and circumstances he contended made him an atypical career offender. The government responded by arguing that the facts presented did not amount to an atypical case. The government noted that under U.S.S.G. §§ 5H1.4 and 5K2.13 mental defects induced by alcohol or drinking problems should not serve as the basis for a finding of atypicality.

The district court refused to grant Morrison's request for a downward departure, stating:

> From what I see, there were some four alcohol-related hospital admissions before '91. There were some six hospital admissions related to alcohol and depression after 1991. There were a number of criminal convictions before, and then there was the series of three or four that oc-

guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court

may consider whether a departure is warranted.
U.S.S.G. Ch. I, Pt. A., intro. comment. (4)(b) (quoting 18 U.S.C. § 3553(b)).

curred in the three- or four-month space at the end of 1992.

I have some difficulty seeing how this case is a case for a departure, as I understand the criteria of *Rivera*. I can tell you, Mr. Walker, if I felt that I had the authority to depart, I would. And I think the sentence I would impose would be in the range of six years. I do not believe that I have the authority *on the facts of this case* to depart.

And I note, for example, in the list of cases you gave me, two of them involve joint motions by the government and the defendant. As you well know, it is my view that the government has far greater authority in sentencing matters these days than does the Court, and this simply proves it. The government isn't moving to depart in this case. I do not think the case fits within *Rivera* and, accordingly, *will not depart.*

This appeal followed.

## II

### THE DEPARTURE DECISION

■ Morrison argues that the district court erred in finding that it was precluded as a matter of law from granting a downward departure. He asserts that the district court failed to impose a shorter sentence due to its mistaken belief that it did not have the authority to depart. In support, Morrison directs us to a single statement made by the court when rendering its decision: "if I felt I had the authority to depart, I would." The government responds that the district court's decision not to depart does not reflect an incorrect application of the Guidelines and is, therefore, unreviewable. The government contends that the statement made by the district court, when read in context, merely shows a "generalized expression of apprehension regarding the Guidelines, not specific judicial findings regarding the authority to depart in this particular case." We agree.

■ The Sentencing Reform Act specifically defines when a defendant can seek appellate review of a sentence. A defendant may appeal a sentence if it was imposed as a result of an incorrect application of the Guidelines. 18 U.S.C. § 3742(a)(2). "[A] refusal to depart cannot constitute an 'incorrect application' of the Guidelines." *United States v. Tucker*, 892 F.2d 8, 10 (1st Cir. 1989). Consequently, no appeal lies from a discretionary refusal to depart. *United States v. Pierro*, 32 F.3d 611, 619 (1st Cir. 1994) (citing *United States v. Tardiff*, 969 F.2d 1283, 1290 (1st Cir.1992); *United States v. Amparo*, 961 F.2d 288, 293 (1st Cir.) *cert. denied*, — U.S. —, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *United States v. Hilton*, 946 F.2d 955, 957 (1st Cir.1991); *United States v. Romolo*, 937 F.2d 20, 22 (1st Cir. 1991)). Appellate jurisdiction does attach, however, where the decision not to depart is based on the sentencing court's assessment of its lack of authority or power to depart. *Id.; Amparo*, 961 F.2d at 292.

The difference between the rule and the exception has been described as follows:

If the judge sets differential factfinding and evaluative judgments to one side, and says, in effect, "this circumstance of which you speak, even if it exists, does not constitute a legally sufficient basis for departure," then the correctness of that quintessentially legal determination may be tested on appeal. But if the judge says, in effect, either that "this circumstance of which you speak has not been shown to exist in this case," or, alternatively, that "while this circumstance of which you speak might exist and might constitute a legally cognizable basis for a departure in a theoretical sense, it does not render this particular case sufficiently unusual to warrant departing," then, in either such event, no appeal lies.

*Pierro*, 32 F.3d at 619. Thus, an appeal lies if the departure decision is based on an assessment that the sentencing court is powerless to depart on the *grounds* alleged by the proponent, but not if the court simply declines to exercise its discretionary power to depart.

■ When determining whether the sentencing court merely refused to exercise its discretionary power to depart, we consider the totality of the record and the sentencing court's actions as reflected therein. *See*

*United States v. LeBlanc,* 24 F.3d 340, 348 (1st Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994). We do not consider any single statement in a vacuum. *United States v. DeCosta,* 37 F.3d 5, 8 (1st Cir.1994); *see LeBlanc,* 24 F.3d at 348. Rather, it is necessary to view the statement in the context of the hearing as a whole and the court's action as reflected by the record. *See DeCosta,* 37 F.3d at 8.

■ Prior to sentencing, a court considering departure must ask:

"1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?

2) Has the [Sentencing] Commission forbidden departures based on those features?

3) If not, has the [Sentencing] Commission encouraged departures based on those features?

4) If not, has the [Sentencing] Commission discouraged departures based on those features?"

*United States v. De Masi,* 40 F.3d 1306, 1323 (1st Cir.1994) (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)). "A court's subsequent analysis varies depending on the category in which the feature justifying the departure falls." *Id.* at 42. If the reasons presented for the departure fall into the discouraged category, those reasons generally will not suffice to take the case out of the "heartland." *Rivera,* 994 F.2d at 949. The sentencing court must look to the Guidelines to determine if a certain feature is discouraged. *De Masi,* 40 F.3d at 1324.

Morrison argued to the district court that he is an atypical career offender because he was suffering from an extended period of severe depression and alcohol abuse at the time the second predicate offense and crime of conviction occurred. Therefore, according to Morrison, the two crimes were sufficiently connected or related to each other to qualify as part of the "same course of conduct." *See* U.S.S.G. § 1B1.3, app. note 9(b).[7] The record reflects that the district court found that the features of the case did not make it "special" or "unusual" and, therefore, never reached the questions of whether the offenses could be merged and whether courts have authority to depart in career offender cases. Several factors lead to this conclusion.

First, in announcing its decision the court made repeated references to *Rivera* that indicated its familiarity with that decision. *Rivera* sets forth the power of a sentencing court to depart from the GSR where circumstances warrant departure. *See* 994 F.2d at 949. Moreover, *Rivera* makes clear that it is the role of the sentencing court to make determinations about the "ordinariness" or "unusualness" of a particular case. *Id.* at 947. We have previously noted that a sentencing court's stated familiarity with *Rivera* is an indicium that the court was aware of its authority to depart downwards. *United States v. O'Connor,* 28 F.3d 218, 222 (1st Cir.1994).

Second, at the sentencing hearing the government never argued that the court was without authority to depart. Rather, it was the government's contention that the facts of the case presented no basis for exercising

---

7.  U.S.S.G. § 1B1.3, app. note 9(b) states:

Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.... The nature of the offenses may also be a relevant consideration.

U.S.S.G. § 1B1.3, comment. 9(b). We have previously held that robberies occurring on different days and at different places, linked only by drug dependency, are not part of the same course of conduct. *United States v. Williams,* 891 F.2d 962, 966 (1st Cir.1989). "[The Guidelines] specifically stipulated that robbery was to be regarded as a crime oriented toward single episodes of criminal behavior, and therefore not to be treated as a continuing offense." *Id.* (citing U.S.S.G. Ch. 3, Pt. D, intro. comment.). Because we conclude that the district court made a discretionary finding of no atypicality, there is no occasion to review whether the rule enunciated in *Williams* applies to Morrison's circumstances.

that authority. The government outlined the reasons why Morrison's situation was not atypical and did not take him outside the heartland.

Third, the court stated: "I do not believe that I have the authority *on the facts of this case* to depart." (emphasis added). This statement, coming on the heels of the government's argument that Morrison's situation was not atypical, and coupled with the court's references to *Rivera*, indicates that the court determined that the particular circumstances of *this case* did not warrant departure under the criteria outlined in *Rivera*. In this vein, the court pointedly used the phrase I "will not depart," clearly evidencing the discretionary nature of its decision.

Based on the facts presented to it in the sentencing memorandum and at the sentencing hearing, the district court found that Morrison's depression and alcohol abuse, and the "downward spiral" resulting therefrom, did not present a situation sufficiently atypical from that of most career offenders to permit characterization as outside the heartland of career offender cases. The court *simply was not persuaded to depart from the* Guidelines. Nor is there anything in the record to indicate that the court ever reached the question of whether a sentencing court has the authority to depart downward in career offender cases where the court finds that the defendant is not a typical career offender.

Even assuming, however, that the statement seized upon by the defendant was considered ambiguous, this alone would not suffice to make the decision not to depart from the GSR either appealable or appropriate for remand. *See United States v. Romero*, 32 F.3d 641, 654 (1st Cir.1994) (noting that although the sentencing court's language was "not a model of clarity," it was sufficiently clear from record that court understood its ability to depart but made a factual and discretionary determination that departure was not warranted). Difficulty commonly arises where a sentencing court uses terse phrases that it cannot or is without authority to depart from the GSR. *DeCosta*, 37 F.3d

at 8. While a sentencing court is not required to state its reasons for refusing to depart, failure to do so may result in a perceived ambiguity. *See id.* Thus, we have suggested that a sentencing court state, where appropriate, "that it has considered the mitigating factors urged but does not find them sufficiently unusual to warrant a departure in the case at hand." *Id.*[8]

If a sentencing court neglects to use such language, however, the sentencing decision is not necessarily ripe for remand or review. Sentencing courts have had abundant opportunity to become experienced with the Guidelines and familiar with their authority to make discretionary decisions regarding whether to depart. *See DeCosta*, 37 F.3d at 8 ("if a district court desired to depart but thought this course forbidden by explicit guideline language, one would expect the court to cast its refusal in these terms"); *see also United States v. Rodriguez*, 30 F.3d 1318, 1319 (10th Cir.1994) ("[W]e no longer are willing to assume that a judge's ambiguous language means that the judge erroneously concluded that he or she lacked authority to downward depart.").

■ There are at least two credible appellate approaches to a ruling wherein the sentencing court has failed to state with clarity its determination that a departure would be impermissible, as a matter of law, on the grounds asserted. The reviewing court may remand for a clear ruling, *see, e.g., United States v. Mummert*, 34 F.3d 201, 205 (3d Cir.1994), or dismiss the appeal in reliance on a presumption that ambiguity alone affords an insufficient basis for concluding that the sentencing court misapprehended its departure authority. *See Rodriguez*, 30 F.3d at 1319; *cf. DeCosta*, 37 F.3d at 8.

Notwithstanding the problematic language in the district court's ruling in the instant case, however, neither option is warranted here. Rather, viewed in harmony with its context, the departure reflects no misapprehension on the part of the district court as to its departure power, but simply its decision

---

**8.** Due to the recurrent nature of this problem, we once again strongly suggest that sentencing courts use this language, or language of identical import, to avoid ambiguities.

not to exercise that power in the present case.

## III

### CONCLUSION

*Because we are without jurisdiction to review the departure decision, the appeal is dismissed.*