USCA1 Opinion

 

 July 12, 1996 [Not for Publication] [Not for Publication] United States Court of Appeals For the First Circuit ____________________ No. 95-1654 UNITED STATES, Appellee, v. VICTOR LAGUER-AVELLANET, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Benito I. Rodriguez Masso for appellant. _________________________ Jeanette Mercado-Rios, Assistant United States Attorney, with _____________________ whom Guillermo Gil, United States Attorney, and Jose A. Quiles- _____________ _______________ Espinosa, Senior Litigation Counsel, were on brief for appellee. ________ ____________________ ____________________ Stahl, J. Defendant-appellant Victor Laguer- Stahl, J ________ Avellanet pleaded guilty, pursuant to a plea agreement, to a drug trafficking conspiracy. Despite the government's recommendation, made in accordance with that agreement, for a twelve-month imprisonment term, the district court imposed a fifteen-month term. In this appeal, Laguer-Avellanet seeks to be resentenced to the recommended term but not to withdraw his plea. I. I. __ Pertinent Facts and Prior Proceedings Pertinent Facts and Prior Proceedings _____________________________________ In December 1994, a grand jury returned an indictment charging in count one that Laguer-Avellanet1 and ten codefendants conspired to distribute and to possess with intent to distribute cocaine. In February 1995, Laguer- Avellanet entered into a plea agreement with the government whereby he agreed to plead guilty to that count. The plea agreement set forth the parties' stipulations as to several sentencing guideline matters.2  It provided that the conduct relevant to the offense yielded an offense level of eighteen, pursuant to U.S.S.G. 2D1.1(a)(3). The parties also agreed to downward  ____________________ 1. Laguer-Avellanet is also known as Ruben Sanchez-Irizarry. 2. The plea agreement originally provided only that it was entered into "pursuant to Rule 11(e)(3)" of the Federal Rules of Criminal Procedure. The parties agreed to add to that provision, "11(e)(1)(C)," which the court acknowledged at the change of plea hearing. -2- 2 adjustments for acceptance of responsibility, U.S.S.G. 3E1.1(b), and for being a minor participant, U.S.S.G. 3B1.2(b), for a total reduction of five levels, yielding a total offense level of thirteen. The plea agreement also stated that "[t]he guideline sentencing range, then, is twelve (12) to eighteen (18) months," and thus, it reflected a presumed criminal history category of one. See U.S.S.G. ___ Ch.5, Pt.A, Sentencing Table. Further, the agreement provided: The United States recommends a twelve (12) month term of imprisonment. No agreement concerning the application of any other sentencing guideline has been entered into by the parties. There is no agreement between the parties concerning the Defendant's criminal history category. All other aspects of the sentence are left to the sound discretion of the Court. The agreement did not explicitly state whether or not the court was bound by the sentence recommendation, or whether Laguer-Avellanet would have the right to withdraw his plea if the court imposed a higher-than-recommended sentence. On February 14, 1995, the district court conducted a change of plea hearing, during which Laguer-Avellanet pleaded guilty with several of his codefendants who had signed identical plea agreements. At that hearing, the court reiterated the plea agreement's provisions regarding sentencing. The court elicited Laguer-Avellanet's acknowledgment (along with the other defendants') that the -3- 3 agreed sentencing range was twelve to eighteen months, and that the government was recommending a twelve-month term of imprisonment.3 The court ensured Laguer-Avellanet's understanding that there was no agreement concerning the criminal history category and that "all other aspects of the sentence are left to the sound discretion of the Court."  Finally, the court informed him that the sentence would be imposed "in accordance with the sentencing guidelines and policy statements." At the end of the change of plea hearing, the court accepted Laguer-Avellanet's guilty plea and ordered a presentence report ("PSR").4 At no time did the court explicitly state that it was accepting, rejecting, or deferring decision on the plea agreement. Further, at no time did the court expressly warn Laguer-Avellanet that it was not bound by the twelve-month recommendation and that it could and might impose a higher sentence. Further, nothing  ____________________ 3. The government confirmed its twelve-month recommendation at the change of plea hearing, although it did not affirmatively recommend it again at the sentencing hearing, stating only, "in keeping with the plea agreement, the United States has nothing to add." Laguer-Avellanet does not suggest that the government breached the plea agreement. 4. Laguer-Avellanet requested to "waive the presentence report" so that he could begin his imprisonment term immediately. The court stated that it would "not accept a waiver of the presentence report," see U.S.S.G. 6A1.1 ___ (prohibiting such waiver), but allowed Laguer-Avellanet's request to begin his imprisonment term before completion of the report and actual sentencing. -4- 4 whatsoever was stated as to whether or not Laguer-Avellanet could withdraw his guilty plea upon learning of the court's ultimate sentencing determination. On May 25, 1995, the district court, after reviewing an amended PSR, conducted a sentencing hearing.  The PSR concluded that, due to two prior convictions, Laguer- Avellanet had a criminal history category of two instead of the previously presumed one, which increased the applicable guideline sentencing range from that indicated in the plea agreement (twelve to eighteen months) to fifteen to twenty- one months: a range in excess of the recommended twelve-month term. Objecting to the PSR's criminal history calculation, Laguer-Avellanet's counsel asserted, "we entered into a plea agreement in this case for a 12-month sentence, and that's what we have been all the time -- let's call it offering [Laguer-Avellanet]." He also argued that the prior convictions were not properly countable in the criminal history category and that, even if they were, they were minimal in nature and the court should depart downward to effect the recommended twelve-month sentence. After repeating his request that "the 12-month sentence be recognized as the applicable sentence and the proper sentence for our client in his case," counsel entreated upon the court that Laguer-Avellanet was truly remorseful for his crime, -5- 5 that there would be no recidivism on his part, and concluded that "it would be only fair for us and for him to receive a twelve-month sentence if that's into [sic] the discretion of the Court." The court rejected these arguments, stating that Laguer-Avellanet had "struck a very good deal" and that he would have probably been sentenced to "fifteen years at least" had he gone to trial and been found guilty. The court acknowledged that the specific sentencing-guideline stipulations had been formed pursuant to Fed. R. Crim. P. 11(e)(1)(C), but, after reminding Laguer-Avellanet that he expressly had not stipulated to the criminal history category, it sentenced him to the lower end of the higher guideline range: fifteen months. The court did not explicitly state whether or not it had accepted or rejected the plea agreement, nor did it offer Laguer-Avellanet an opportunity to withdraw his guilty plea. At the conclusion of the hearing, Laguer-Avellanet did not object further, offer anything else to inform the proceedings, or request to withdraw his plea.5  ____________________ 5. At oral argument before this court, we asked counsel for Laguer-Avellanet whether or not, at that time, his client had completed the fifteen-month incarcerative portion of his sentence. We indicated that if he had been released, this case might be moot. Neither counsel for Laguer-Avellanet nor the government's attorney knew if he was still in custody. This court has now been informed that Laguer-Avellanet was released from custody into a supervised release program on March 29, 1996 (well before the date of oral argument before -6- 6 II. II. ___ Discussion Discussion __________ Laguer-Avellanet now claims that the parties did not agree merely to a twelve-month recommendation, but ______________ rather, that they firmly agreed that twelve months was the appropriate sentence for his crime. He contends that because the district court effectively accepted the plea agreement, it was bound to impose the twelve-month term and was obligated to "enter whatever [sentencing] findings were necessary to reach the same." We disagree. The plain language of the plea agreement provided that, although the government would recommend a twelve month imprisonment term, other aspects of the sentence were entirely open to the district court's resolution, to wit: the application of sentencing guidelines to which the parties did not otherwise stipulate, calculation of the criminal history category, and "[a]ll other aspects of the sentence." During  ____________________ this court), having served the fifteen-month term. Although Laguer-Avellanet challenges the length of the incarcerative portion of his sentence and not his conviction, we find that his appeal is not moot despite his release from prison because the imposition of the fifteen- month term instead of a twelve-month term could lead to a future "collateral consequence." See U.S.S.G. 4A1.1 (a) & ___ (b) (mandating three criminal history points for prior sentences exceeding one year and one month imprisonment, but only two if for a lesser term (of a least sixty days)); United States v. Kassar, 47 F.3d 562, 565 (2d Cir. 1995) ______________ ______ (finding not moot a sentence challenge despite completion of sentence because of possible future criminal history category calculation). -7- 7 the plea colloquy, the court reiterated these provisions individually and elicited the Laguer-Avellanet's acknowledgment of them. Laguer-Avellanet's statements and arguments to the court at sentencing, while urging a twelve- month sentence, reveal his understanding that the imposition of that term was within the discretion of the court. On appeal, Laguer-Avellanet emphasizes, in a talismanic fashion, the language of Fed. R. Crim. P. 11(e)(1)(C) and (e)(3), the provisions under which the parties purported to enter into the plea agreement. On its face, Rule 11(e)(1)(C) applies when the parties have agreed to a "specific sentence," which must then be embodied in the final judgment and sentence, per Rule 11(e)(3), if the court accepts the plea agreement. Regardless of whether or not the parties' stipulation to the several sentencing-guideline matters comes within the meaning of "specific sentence," it is clear that the parties did not agree that twelve months ___ was "the appropriate disposition of the case" within the meaning of Rule 11(e)(1)(C). Rather, the parties unequivocally agreed that the government would only recommend that term and particularly that the appropriate criminal history category was an open question. We need not conduct an exhaustive inquiry as to whether the parties' agreement was truly an "11(e)(1)(C)" agreement, or instead, effectively an "11(e)(1)(B)" -8- 8 agreement, or perhaps, a strange hybrid of the two.6  Because the parties simply did not agree to a firm twelve- month sentence, Laguer-Avellanet cannot seek "specific performance" of the plea agreement to reduce his imprisonment term. Moreover, contrary to Laguer-Avellanet's assertion, a court could not be "forced" to make the requisite sentencing findings in order to give effect to a plea agreement specifying either a certain term or a recommendation. See __ ___ U.S.S.G. 6B1.2(b) & (c) (allowing court to accept a sentence recommendation or agreement only when it is satisfied that the sentence falls within the applicable guideline range or the sentence reflects a justifiable departure from that range). While we find an affirmance appropriate, we offer  some guidance for the handling of plea agreements involving sentencing promises. Where, as here, the government agreed only to recommend a sentence, the district court should, during the change of plea hearing, specifically inform the defendant that it is not bound by that recommendation and that it might impose a sentence less favorable to the defendant. The court should also clearly inform the defendant whether or not he will have the right to withdraw  ____________________ 6. Rule 11(e)(1)(C) governs plea agreements in which the parties agree "that a specific sentence is the appropriate disposition of the case," while 11(e)(1)(B) governs agreements in which the parties agree only that the government will recommend a particular sentence. -9- 9 his guilty plea at some later time.7 Finally, the court should explicitly specify the status of the plea agreement:  whether it is accepted, rejected, or deferred pending consideration of the PSR.8 Here, the district court's procedures were much more summary and therefore subject to potential misunderstanding. The possible remedy, however, for such shortcomings is not (as Laguer-Avellanet seeks here) "specific performance" of an agreement term to which both parties never agreed, but rather, the opportunity to withdraw the plea.  Because Laguer-Avellanet does not argue that he would have withdrawn his plea but for these plea colloquy deficiencies, he has not established prejudice from them. At bottom, because Laguer-Avellanet is not entitled to the relief he seeks, we must affirm his sentence.  ____________________ 7. If the plea agreement was entered into pursuant to Rule 11(e)(1)(B), the defendant must be advised that he has no right to withdraw his plea if the court does not accept the sentence recommendation. See Fed. R. Crim. P. 11(e)(2). If, ___ instead, the parties agreed under 11(e)(1)(C), and the court rejects that agreement, the court must "afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea . . . the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." Fed. R. Crim. P. 11(e)(4). 8. We note that under U.S.S.G. 6B1.1(c), the court must defer its decision to accept or reject a plea agreement until it has the opportunity to consider the presentence report, unless that report is not required under U.S.S.G. 6A1.1. -10- 10 Laguer-Avellanet's final challenge is to the calculation of his criminal history category. He argues that, assuming the court did not err in accepting and implementing the plea agreement, it should have granted his request to depart downward from the criminal history category of two because it significantly overrepresented the seriousness of his criminal history.9 The law is well settled, however, that "no appeal lies from a discretionary refusal to depart." United States v. Morrison, 46 F.3d 127, _____________ ________ 130 (1st Cir. 1995). Thus, this challenge is wholly unavailing. III. III. ____ Conclusion Conclusion __________ For the foregoing reasons, the judgment of the district court is affirmed. ________  ____________________ 9. Laguer-Avellanet does not, in this appeal, pursue his argument that the two prior convictions were not properly countable for purposes of calculating the criminal history category. -11- 11