USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1371 UNITED STATES OF AMERICA, Appellee, v. MODESTO SALDANA, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court, issued on March 31, 1997, is amended as follows: On page 10, line 5 of 3rd full paragraph, replace "consecutive" with "concurrent". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1371 UNITED STATES OF AMERICA, Appellee, v. MODESTO SALDANA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Diana L. Maldonado, Federal Defender Office, for appellant. __________________ John M. Griffin, Assistant United States Attorney, with whom ________________ Donald K. Stern, United States Attorney, was on brief for the United _______________ States. ____________________ March 31, 1997 ____________________ BOUDIN, Circuit Judge. Modesto Saldana appeals to ______________ contest his prison sentence. He argues that delay in prosecuting him caused prejudice that should have been offset by a downward departure. The government, as usual, says that a refusal to depart is not reviewable and, in any event, was not error. The merits of the case are straightforward; what is more difficult is to bring some order to a recurring, inherently confusing issue created by an overlap between the question of our authority to review and the merits of the case. I. Saldana, a citizen of the Dominican Republic, was convicted in January 1991 of a drug offense in state court and given probation. In August and October 1991, he was arrested by local authorities and charged with two additional drug offenses committed while still on probation. But he was thereafter deported in October 1991 before being tried for the newly charged crimes.  Thereafter, Saldana reentered the United States without permission from the Attorney General. In April 1993 he was arrested and drugs were found on his person, giving rise to a fourth state drug charge. Following state court proceedings, he was sentenced to 30 months in state prison as punishment for four different offenses: the January 1991 offense, for which probation was revoked; the two later 1991 offenses; and the April 1993 offense. The Immigration and Naturalization Service lodged a detainer against Saldana at the time of his arrest. In March 1994, it appears that federal agents interviewed him while he was serving his state sentence. He was not, however, charged with the federal offense at that time. Saldana served 20 months of his 30-month state sentence and was released in December 1994. Shortly afterwards, he was indicted by a federal grand jury and charged with reentering the United States without permission after having been deported on account of a serious drug offense. 8 U.S.C. 1326(a), 1326(b)(2). The indictment was well within the limitations period. See 18 ___ U.S.C. 3282. Saldana pled guilty to this charge in August 1995. He was sentenced by the district court in February 1996 to 70 months' imprisonment. The sentence was the minimum allowed within the guideline range (70 to 87 months) as computed by the district court. The computation reflected a base offense level of 8 for illegal reentry, U.S.S.G. 2L1.2(a), adjusted upward by 16 levels because Saldana had been deported for an aggravated felony, id. 2L1.2(b)(2), and reduced by 3 levels due to his ___ acceptance of responsibility, id. 3E1.1. Saldana's ___ criminal history category (V) reflected the four prior drug convictions, three of which occurred after his arrest in April 1993. -3- -3- At sentencing Saldana argued that if he had been charged with the federal offense while still serving his state sentence, the federal sentence would, under U.S.S.G.  5G1.3(c), have been set to run concurrently with the state sentence. That provision gives the district court latitude to make a new sentence concurrent to or consecutive with one already being served; and, as it stood prior to a 1995 amendment, the section's application note 3 contained a comment that might have supported a concurrent sentence. U.S.S.G. 5G1.3, comment. n.3 (Nov. 1994).1  Concurrency would have effectively subtracted from the federal sentence any time served on the state sentence; and Saldana asked the district court to achieve the same result through a downward departure. With less basis in the guidelines, he also argued that this hypothetical single sentencing would also have resulted in a much lower criminal history score.2 Taking this lower score together with  ____________________ 1The comment, since repealed, U.S.S.G. App. C, Amend. 535 (Nov. 1995), suggested that the federal court compute the sentence as if the offenses had been the subject of a single federal sentence. This would help Saldana because the guidelines ignore less serious crimes sentenced at the same time as a more serious one where the offense level disparity is quite large. U.S.S.G. 3D1.4. 2His imaginative theory was that the three latest drug offenses would not have been prior convictions adding _____ automatically to his score if he had been sentenced at the same time for those offenses and the reentry offense. But if the criminal history score were computed in this lenient fashion, it would arguably have underrepresented actual criminal history, warranting an upward departure. U.S.S.G.  -4- -4- concurrency, Saldana argued that his proper federal sentence should be 21 to 31 months.  In explaining its refusal to depart, the district court said that departures were possible when the case fell outside the "heartland" of the guidelines; that the heartland "has to do with the nature of the offense or the nature of the offender"; that nothing about the offense here or the defendant made this "an unusual out of the heartland case"; and that the court would be more sympathetic to a departure request if the government had deliberately delayed the prosecution for improper reasons. The court then said: There is nothing in this case to suggest that there was any deliberate misconduct or deliberate omission on the part of the Government. While I recognize that this is not a case in which due process is claimed, the due process argument is being made, it seems to me that if a departure is going to be made where there is nothing about the offender and nothing about the offense that suggests the case [is] outside of the heartland, that there should be something to suggest more than mere delay, mere passage of time to make this case suitable for a heartland downward departure. Accordingly as I said, I will not grant the motion for downward departure. Saldana now appeals, arguing that the district court misunderstood its authority to depart. The government says that we have no jurisdiction to hear the appeal. It also says that the district court did not misunderstand its authority and that its refusal to depart was sound. Finally,  ____________________ 4A1.3. -5- -5- it says that Saldana has misconstrued section 5G1.3(c) and that the sentence would have had to be consecutive even if it had been imposed during the term of the state sentence. II. The jurisdictional argument made by the government has become a recurring distraction. Under 18 U.S.C. 3742(a), a defendant may appeal from his sentence, inter alia, if it was __________ imposed "in violation of law" or by "an incorrect application of the sentencing guidelines"; but the defendant may not appeal from a sentence within the guideline range if there was no legal error and the only claim is that the district court acted unreasonably in declining to depart. See United ___ ______ States v. Tucker, 892 F.2d 8, 10 (1st Cir. 1989). ______ ______ Where the district court refuses to depart because of a misunderstanding as to the law, the legal error is reviewable under one or both of the two quoted rubrics. United States ______________ v. Romolo, 937 F.2d 20, 23 (1st Cir. 1991). But confusion, ______ and many "jurisdictional" objections, have resulted from the overlap between the jurisdictional issue and the merits. Read literally, 18 U.S.C. 3742(a) might suggest that the authority to review a "violation" or "incorrect application" vanishes when the appellate court decides that the district court did not commit a legal error.  ___ A more sensible reading of the statute is that the defendant has a right to appeal to present a claim of legal _____ -6- -6- error, or at least a colorable claim. The balance of the statute bears out this reading. It says that the court on review shall determine whether there was such a legal error, shall remand if there was such an error, and if not "shall affirm" the sentence. 18 U.S.C. 3742(f). It does not say "shall dismiss the appeal." See Romolo, 937 F.2d at 22-23 ___ ______ (stating that appellate jurisdiction exists if defendant "advances a `purely legal' issue"). Plainly Saldana is claiming that the district court committed two legal errors: by saying or implying (1) that departures can be based only upon the nature of the offense or the nature of the offender and (2) that a departure for government delay can only be based on misconduct. These are colorable readings of the district court opinion. And, taken alone, the first proposition is wrong, and the second arguably so. Why, then, is the government arguing that we have no jurisdiction to hear the appeal? The answer, perhaps, is partly habit and a refusal to leave out any possible argument, especially one framed as an attack on "jurisdiction." But partly it is our own fault for failing to follow a consistent course. Compare, e.g., United _______ ____ ______ States v. Morrison, 46 F.3d 127, 132-33 (1st Cir. 1995) ______ ________ (dismissing appeal), with United States v. Romero, 32 F.3d ____ ______________ ______ 641, 654 (1st Cir. 1994) (affirming sentence). Henceforth, where the defendant colorably claims that a refusal to depart -7- -7- rests upon a legal error--and so alleges that the sentence _______ was imposed in violation of law or by an incorrect application of the guidelines--the government might wish to save time by focusing on the question of whether a legal error occurred. Cf. Bell v. Hood, 327 U.S. 678, 681-83 ___ ____ ____ (1946) (jurisdiction may be assumed to determine whether complaint states a federal claim).  We do not mean to say that the so-called jurisdictional objection is always inapt. It would be perfectly valid if, as rarely happens, the defendant's only claim on appeal was that, although the district court had understood its authority, it abused its discretion in declining to depart. And if the latter claim is advanced along with a claim of legal error, the government is within its rights to remind us that the abuse of discretion claim is not subject to review. See Tucker, 892 F.2d at 9-10. ___ ______ III. In turning now to the merits, the question is whether the district court did misunderstand its authority to depart. What the district court thought was the scope of its _______ authority is perhaps a question of fact, but it is one that we must answer ourselves, by reviewing the sentencing transcript. Whether the district court's belief was mistaken is plainly a legal question that we review de novo. United _______ ______ States v. Grandmaison, 77 F.3d 555, 560 (1st Cir. 1996). ______ ___________ -8- -8- The first proposition attributed to the district court by Saldana, and claimed to be error, is that the guideline heartland is defined by the nature of the defendant and the nature of the offense, and that departures are to be based upon the same two variables. The district court did use approximately these words. Taken at face value, they are not a complete statement of the possible bases for departure. True, many of the possible factors that could provide grounds for departure relate to the nature of the offense, and others relate to the defendant.3 But these two categories do not exhaust all possibilities. Merely as an example, United States v. Koon, 116 S. Ct. 2035, 2053 (1996), _____________ ____ approved a departure based partly upon the prosecution of the same conduct by a second sovereign. But, of course, whatever the district court said, it did not mean that departures could only be based on the ____ defendant's conduct or the defendant. We know this--quite apart from common sense--because the district court explained that it would have considered a departure in this very case if the defendant's sentence had been increased because of a delay caused by prosecution misconduct, a variable unrelated to the defendant's circumstances or to his own conduct.  ____________________ 3See, e.g., United States v. Pierro, 32 F.3d 611, 619-20 ___ ____ _____________ ______ (1st Cir. 1994) (claim that "conduct" fell outside the heartland), cert. denied, 115 S. Ct. 919 (1995); United _____________ ______ States v. Rivera, 994 F.2d 942, 952-53 (1st Cir. 1993) (claim ______ ______ of heavy family responsibilities). -9- -9- Obviously what the district court meant to say was that departures are most often based upon some special characteristic of the defendant or the offense and that nothing unusual in these respects was presented here. The __________________ court then addressed the single feature here that was arguably different from the typical case, namely, the delay in prosecution; and, far from ruling delay out as a potential departure factor, the court then considered when delay might be the basis for a departure. In sum, the first claim of error rests on a quotation out of context. The second claim of error is a closer question, but not by much. The district court could be taken to have said that it would consider delay in prosecution as a basis for departure, assuming prejudice, only if the delay were caused by government misconduct reflecting bad faith. This is certainly a permissible reading of the court's words, if one juxtaposes the court's statement that there was no "deliberate misconduct" here with its subsequent statement that "there should be something to suggest more than mere delay." If the district court meant that only a bad faith delay could support departure downward, it arguably overstated the law. Under the guidelines, a delay in prosecution can have various adverse effects on the defendant's sentence; for example, apart from the lost opportunity for a concurrent -10- -10- sentence, it can drastically affect criminal history if in the meantime the defendant is convicted of other crimes. See ___ U.S.S.G. 4A1.1. Or, a mitigating circumstance--which might otherwise affect sentencing--might disappear. See U.S.S.G.  ___ 5K2.0. It seems to us possible that someone with time and ingenuity could construct a case where a careless or even an innocent delay produced sentencing consequences so unusual and unfair that a departure would be permissible. Certainly, the Ninth Circuit thought this was so in United States v. _____________ Martinez, 77 F.3d 332, 336-37 (1996). But it is also ________ unlikely that the district court really meant to rule out this remote possibility, and it is certain that the possibility is irrelevant to the present case. After all, what the district court said is true almost ______ all of the time: deliberate tampering to increase a sentence would be a concern, but the ordinary accidents of acceleration or delay are part of the fabric of criminal proceedings. Indeed, several of our decisions rejecting due process claims that delay caused sentencing prejudice have emphasized that the delay was not aimed at manipulation. See ___ United States v. McCoy, 977 F.2d 706, 711 (1st Cir. 1992); ______________ _____ Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990). And ____ _____________ in the present case, the delay was neither extreme nor implicitly sinister. -11- -11- District judges normally deliver their decisions on sentencing from the bench, just after, and sometimes in the course of, the presentation of numerous arguments and even evidence as to the permissible range and proper sentence. These often spontaneous remarks are addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of all of the surrounding law. What the district judge said here was entirely adequate as directed to the present case. Accordingly, we have no occasion to consider whether Saldana could or would have received a partly concurrent sentence if the federal sentencing had occurred while he was still in state prison. The question is laborious even to describe in full because it is complicated by changes in guideline commentary and a possible ex post facto claim if _____________ the current version were applied to Saldana. Resolution can await a case where the issue could affect the result. Affirmed. _________ -12- -12-