USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2283 UNITED STATES OF AMERICA, Appellee, v. JUANA ORTEGA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ ____________________ Before Stahl and Lynch, Circuit Judges, ______________ and O'Toole,* District Judge. ______________ ____________________ Richard K. Corley for appellant. _________________ Zechariah Chafee, Assistant United States Attorney, with ________________ whom Sheldon Whitehouse, United States Attorney, was on ___________________ brief, for appellee. ____________________ May 20, 1997 ____________________ *Of the District of Massachusetts, sitting by designation. Per Curiam. Juana Ortega appeals both her Per Curiam.  ___________ conviction for conspiracy to distribute cocaine base ("crack" cocaine) and her sentence. She claims that her trial was flawed in that the court gave an improper Allen charge and _____ that there was insufficient evidence to support her conviction. She also argues error in the trial court's denial of her motion for a new trial. Finally, she disputes the court's determination of her sentence. We affirm. I. Ortega was charged with distributing crack cocaine in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2, and conspiracy to distribute crack cocaine in violation of 21 U.S.C. 841(a)(1), 846. Her arrest resulted from an ongoing undercover operation conducted by the Drug Enforcement Agency ("DEA"). Between December 18 and 19, 1994, Hector San Martin, a DEA informant, made arrangements to purchase crack from Julio Valdez at a Providence, Rhode Island, Burger King. Although Valdez himself had made a previous drug delivery to San Martin several days earlier, Valdez told San Martin by phone that this time the crack would be delivered in the Burger King parking lot on December 19 by a boy, girl, or woman. The Burger King was located about a quarter mile from the apartment Valdez was using at 37 Labin Street in Providence.  -2- 2 On the day of the deal, Valdez told San Martin by phone that a lady in white would deliver the drugs. The "lady in white" turned out to be Ortega. That afternoon, DEA agents conducting surveillance observed Valdez and Ortega emerge from the Labin Street apartment and walk together to the Burger King. After Valdez pointed to San Martin's car, Ortega got into the front seat. Valdez remained nearby to keep a lookout.  According to San Martin's testimony, when Ortega entered the car, he asked Ortega if she had "the stuff," and she replied "yes." She then pulled out a clear plastic bag containing cocaine base from her inside jacket pocket. After San Martin explained that he wanted to check the quality, Ortega answered "okay" and handed the bag to him.  Leaving the crack bag on the floor of the car, San Martin told Ortega that the money was in the trunk and got out. At the sight of the raised trunk door -- the signal for arrest -- DEA agents moved in to arrest Valdez and Ortega. After a few seconds, Ortega got out of the car and ran screaming; she was caught and arrested by one of the agents. Valdez, who had also tried to run, was caught and arrested as well.  In her statement to police, Ortega complained of severe neck pain due to a thyroid condition and said that she had been at 37 Labin Street, her girlfriend's apartment, only -3- 3 to rest. She explained her walk to the Burger King as an attempt to ease the pain. As for the drug delivery, she said only that at some point she was asked to do a "favor" and that because of her physical pain, she was not thinking clearly. On the second day of jury deliberations at Ortega's trial, the jury informed the court that it had reached a verdict on all counts but was deadlocked on the conspiracy count. The court then issued a supplemental charge instructing the jury to go back and try to reach a verdict. Thirty minutes later, the jury returned a guilty verdict on the conspiracy charge. At sentencing, the court found that Ortega had a base offense level of 32 based on the quantity of crack she was delivering (84.3 grams) and a criminal history category of I. The court then granted a two-level reduction pursuant to U.S.S.G. 5C1.2 and a four-level reduction for Ortega's minimal role in the offense. Thus, the offense level was reduced from 32 to 26, and defendant was sentenced to 63 months in prison and 5 years of supervised release. II. Ortega's motion for acquittal based on an insufficient evidence argument was denied by the district court. Viewing the record in the light most favorable to the government, a rational jury could have found guilt beyond a -4- 4 reasonable doubt. See United States v. Dockray, 943 F.2d ___ ______________ _______ 152, 157 (1st Cir. 1991). We therefore affirm the district court's denial of Ortega's Rule 29(c) motion. See Fed. R. ___ Crim. P. 29(c). To prove conspiracy, the government must show that the defendant had the intent to agree and that the defendant had an intent to distribute cocaine -- the substantive offense. See United States v. DeLutis, 722 F.2d 902, 905 ___ _____________ _______ (1st Cir. 1983). Viewing the evidence and drawing inferences therefrom, a rational jury member could certainly have found guilt beyond a reasonable doubt. See United States v. ___ _____________ Montas, 41 F.3d 775, 778 (1st Cir. 1994), cert. denied, 115 ______ _____ ______ S. Ct. 1986 (1995). Such evidence included Valdez's statement to San Martin that a woman wearing white would deliver the drugs, Ortega's walk with Valdez to the Burger King, Ortega's entrance into a stranger's car, and her prompt delivery of a bag containing crack previously hidden on her body, when asked for "the stuff."  This case is unlike those Ortega cites for the proposition that a single drug transaction is insufficient evidence of conspiracy. See, e.g., Delutis, 722 F.2d at 906; ___ ____ _______ United States v. Izzi, 613 F.2d 1205, 1210 (1st Cir. 1980). _____________ ____ There is no such per se rule in any event; we look at all the facts in the case. DeLutis merely held that the single sale _______ there was insufficient to tie the defendant buyer to the -5- 5 sellers' drug distribution conspiracies. See DeLutis, 722 ___ _______ F.2d at 905-06; see also United States v. Acevedo, 842 F.2d ___ ____ _____________ _______ 502, 505-06 (1st Cir. 1988) (rejecting the argument that evidence of conspiracy between sellers must be insufficient because it involved only a single sale). A single sale can establish a common purpose on the part of the sellers -- here, Ortega and Valdez. See Acevedo, 842 F.2d at 506.  ___ _______ Moreover, in DeLutis, there was no direct or circumstantial _______ evidence that defendant intended to agree to become involved in a larger supplier/distributor relationship, and there was no basis to infer based on the single act in question. In Izzi, there was no evidence of agreement linking the ____ defendant to the broader conspiracy during the dates charged in the indictment. Here, there were only two members of the conspiracy, and it is not difficult to infer knowledge and agreement.  Other cases Ortega cites for support are also distinguishable. See, e.g., United States v. Ocampo, 964 ___ ____ ______________ ______ F.2d 80 (1st Cir. 1992); United States v. Mehtala, 578 F.2d 6 _____________ _______ (1st Cir. 1978). The evidence here shows that Ortega's level of involvement was greater than mere knowledge of the substantive crime and thus suffices to support the jury's finding that there was an intent to agree and an intent to distribute. See United States v. Brandon, 17 F.3d 409, 439- ___ _____________ _______ 40 (1st Cir. 1994) (explaining that Ocampo and Mehtala held ______ _______ -6- 6 only that defendant's mere presence at scene of crime or mere association with criminals was insufficient to support conspiracy conviction).  Ortega also challenges the supplemental charge the judge gave to the jury when it announced that it was deadlocked on the conspiracy count. The trial court committed no error. In fact, the judge recited verbatim the Allen-type charge recommended by this court in United States _____ _____________ v. Angiulo, 485 F.2d 37, 40 n.3 (1st Cir. 1973). That the _______ jury returned a verdict thirty minutes later is not, as Ortega asserts, evidence of "coercion."  Ortega's appeal of the trial court's denial of her motion for new trial fares no better. We review only for abuse of discretion or misapplication of law. See United ___ ______ States v. Rodriguez, 738 F.2d 13, 17 (1st Cir. 1984). The ______ _________ district court need only order a new trial if a miscarriage of justice would otherwise result. See United States v. ___ _____________ Indelicato, 611 F.2d 376, 387 (1st Cir. 1979). Ortega __________ presents no claim that even suggests a miscarriage of justice. Moreover, she does not recount any prejudicial acts that resulted in an unfair trial, see Payton v. Abbott Labs, ___ ______ ___________ 780 F.2d 147, 152-53 (1st Cir. 1985), nor does she contend that the verdict was seriously erroneous, see Borras v. Sea- ___ ______ ____ Land Serv., Inc., 586 F.2d 881, 887 (1st Cir. 1978). It was ________________ well within the court's discretion to deny the motion.  -7- 7 Lastly, Ortega challenges her sentence on two equally unsuccessful grounds, arguing first that the judge should have used the base offense level for powder cocaine instead of crack cocaine and, second, that the court should have allowed a downward departure for diminished capacity under U.S.S.G. 5K2.13. There is absolutely no support for Ortega's first claim: the court, pursuant to the Sentencing Guidelines, calculated the base offense level based on the drug involved in the crime. See U.S.S.G. 2D1.1(c). ___ Evidence at trial showed that the drug was crack cocaine.  As for Ortega's second claim, we are without jurisdiction to review a discretionary refusal to depart. See United States v. Morrison, 46 F.3d 127, 130 (1st Cir. ___ _____________ ________ 1995); see also United States v. Saldana, 109 F.3d 100, 102- ___ ____ _____________ _______ 03 (1st Cir. 1997). While the district court did not explicitly address Ortega's request for departure for diminished capacity, it is clear from the total circumstances of the case as well as the court's remarks at sentencing that, rather than believing it lacked authority to depart, the court simply declined to do so. See Morrison, 46 F.3d at ___ ________ 130. Ortega has advanced no colorable claim of legal error that would lead us to exercise jurisdiction here. Affirmed. ________  -8- 8