[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 97-1580
UNITED STATES OF AMERICA,
Appellee,
v.
WALLY BAMDELE,
Defendant, Appellant.

No. 97-1581
UNITED STATES OF AMERICA,
Appellee,
v.
EGHOSA OGBEMUDIA,
Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. Mary M. Lisi, U.S. District Judge]

Before
Boudin, Circuit Judge,
Campbell and Bownes, Senior Circuit Judges.


Louis F. Robbio with whom Robbio & Nottie Ltd. was on brief for
appellant Wally Bamdele.
James M. Fox, by appointment of the court, for appellant Eghosa
Ogbemudia.
Edwin J. Gale, Assistant United States Attorney, with whom Sheldon
Whitehouse, United States Attorney, was on consolidated brief for the
United States.



March 9, 1998
Per Curiam. Eghosa Ogbemudia and Wally Bamdele were
convicted on June 20, 1996, of six counts of bank fraud, 18
U.S.C. 2, 1344, and one count of conspiracy to commit bank
fraud, 18 U.S.C. 371. The evidence showed that Ogbemudia,
with the assistance of Bamdele, gave fraudulent checks to
others, instructing the recruits to deposit the checks into
their own bank accounts and then to withdraw the money in
cash a few days later and give most of the money to the
appellants. The scheme was made possible because the banks
allowed the money to be withdrawn before the validity of the
checks could be determined.
Ogbemudia was sentenced to 51 months in prison, and Bamdele
to 46 months. Both were also sentenced to five years of
supervised release (or, if deported after completing their
terms, five years of exile from the United States). 
Appellants were also ordered to make restitution of
$55,650.00 to the defrauded bank.
On appeal, two points are worthy of brief discussion.
1. Bamdele argues that his sentence was wrongly increased for
obstruction of justice . In part due to information from a
recruit who agreed to cooperate with the Secret Service,
Bamdele was arrested in November 1995. In December 1995,
Bamdele, who had been released from jail, came to the
witness's home while she was at work. That evening, he came
to her home again, pounded on her door and yelled for her to
come downstairs. The witness, fearing retribution for her
cooperation, called the police.
When the police arrived, the witness went outside to tell the
story of the check scheme to the police in order to explain
to them why Bamdele was at her home. Bamdele said that she
was lying. As Bamdele was being arrested, his companion, who
had been waiting in the car, told Bamdele--"within earshot of
[the witness]"--that he would tell Bamdele's "people" about
the witness. Bamdele said nothing in response.
Based on this episode, the district court imposed on Bamdele
a two-level increase for obstruction of justice, U.S.S.G. 
3C1.1, raising the maximum sentence from 37 months to 46
months. In explaining this enhancement, the district judge
referred to the companion's statement as "an additional
threat, which is tacitly accepted by this defendant . . . ." 
Bamdele argues that he cannot be held responsible for a
threat uttered by his companion, and that his own silence did
not constitute an adoptive admission of the threat. 
We agree that Bamdele would not have been responsible for
silence alone, but do not think that this is a fair reading
of the evidence, which virtually compelled the enhancement. 
Bamdele twice visited the home of a cooperating witness,
pounded on her door, screamed at her, and accused her of
lying; this is ample to sustain the district court's finding,
on a preponderance standard, that Bamdele was trying to
intimidate the witness. The companion's remark simply
confirmed what was implicit in these events.
We also reject Bamdele's argument that the obstruction did
not occur "during the investigation . . . of the instant
offense," which is a requirement of U.S.S.G. 3C1.1. The
witness that Bamdele tried to intimidate had provided an
early lead in the investigation of the scheme for which
Bamdele was ultimately convicted in the district court. It
is irrelevant whether the particular check or checks
connected to the witness happened to be the focus of the
prosecution.
2. The more interesting issue in the case, which we need not
decide on the merits, is appellants' claim that a downward
departure was appropriate because of their status as aliens. 
18 U.S.C. 3624(c) instructs the Bureau of Prisons, "to the
extent practicable," to move prisoners from prisons into
transitional detention, like halfway houses, during the last
tenth of their sentences. Under Bureau of Prisons policy,
this arrangement (we are told) is not available to convicted
aliens. Therefore, the appellants reason, district courts
should be allowed to reduce by ten percent the length of
aliens' sentences.
When the argument was made to the district court, it
summarily denied the requested departure. At least two
circuits have indicated that such a departure is permitted. 
See United States v. Smith, 27 F.3d 649, 655 (D.C. Cir.
1994); United States v. Farouil, 124 F.3d 838, 847 (7th Cir.
1997). Another district judge in this circuit has recently
departed on the same basis. See United States v. Bakeas, 
F. Supp. , 1997 WL 757860, *8 (D. Mass. Nov. 14, 1997). 
Bamdele cited Smith to the district court in his sentencing
brief; nothing to the contrary was cited by the government.
It is common practice that when a district court wants to
depart but thinks that the law bars such a departure, the
district court makes this clear at sentencing. Here, the
only authority cited to the judge was Smith, affirming a
similar departure. We are satisfied that the district court
refused to exercise its discretion to depart, see, e.g.,
United States v. Rizzo, 121 F.3d 794, 799-800 (1st Cir.
1997); United States v. Morrison, 46 F.3d 127, 130-33 (1st
Cir. 1995), and we reserve for another time the question
whether such a departure would ever be permitted.
Ogbemudia and Bamdele raise a number of other claims that are
adequately answered in the government's brief. These include
jury venire composition arguments and a number of sentencing
arguments that, while legitimately raised, do not come close
to showing an abuse of the district court's discretion or
clear error. Bamdele also says that the evidence was
insufficient to convict him on certain counts, but we hold
that it was sufficient. Ogbemudia challenges the restitution
order, which we also hold to have been proper.
Affirmed.