**UNITED STATES of America,
Appellee,**

v.

**Juan BROOKE, Appellant.**

**No. 01–3020.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 2002.

Decided Oct. 25, 2002.

Appeal from the United States District Court for the District of Columbia (No. 00cr00190–01).

H. Heather Shaner, appointed by the court, argued the cause and filed the brief for appellant.

Michael C. Liebman, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and John R. Fisher and William B. Wiegand, III, Assistant U.S. Attorneys.

Before: HENDERSON, TATEL, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

In this appeal, defendant Juan Brooke challenges the sentence he received after pleading guilty to a drug conspiracy charge. At sentencing, the district court denied Brooke's request to depart downward from the applicable United States Sentencing Guidelines range based on his age and physical condition. Because the district court properly understood the guidelines and its authority to depart, and did not make clearly erroneous factual findings, we affirm the court's decision not to grant the defendant a departure.

I

On April 6, 2000, officers of the Metropolitan Police Department searched Brooke's apartment pursuant to a search warrant. Upon entering the apartment, the officers found Brooke in the bedroom, sitting on the bed. In his pants pocket was a bag containing seventy individually-wrapped packets of cocaine base, totaling 8.8 grams of the drug. On the bed next to Brooke were three large plastic bags containing a total of 63 grams of cocaine base. After negotiation with the government, Brooke waived indictment and pled guilty to one count of violating 18 U.S.C. § 371, which proscribes conspiracies to commit offenses against the United States, by conspiring to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii).

Brooke's conviction, at the age of 82, was his third since coming to the United States in 1980. In 1989, at the age of 70, he was convicted in federal district court of possession with intent to distribute cocaine base. After serving 60 months in prison, Brooke was placed on supervised release. In 1997, at the age of 78 and while on supervised release for the 1989 conviction, Brooke was convicted in District of Columbia Superior Court on cocaine-related charges. After serving six months in prison, he was released on probation. Brooke was still on probation at the time of the April 6, 2000 arrest that led to the sentence that is the subject of the current appeal.

For a person with Brooke's criminal history, and with credit for acceptance of responsibility, the amount of drugs found on his person and on his bed would normally have generated a guideline sentencing range of 121–151 months. *See* Presentence Report ¶ 50. In this case, however,

the government's agreement to charge Brooke with conspiracy under 18 U.S.C. § 371, rather than with the substantive offense of distribution under 21 U.S.C. § 841, dictated a guideline sentence of only 60 months, the statutory maximum for violations of § 371. *See* U.S.S.G. § 5G1.1(a) (providing that where the statutory maximum is less than the minimum of the applicable guideline range, the guideline sentence is the statutory maximum).

After his plea, Brooke filed a sentencing memorandum with the district court, seeking a downward departure from his guideline sentence based on his age and physical condition. Brooke's memorandum stated that he was 82 years old, and that he had the following "serious physical infirmities": (1) a "markedly swollen right knee" with "obvious joint effusions, and tenderness and flexion of knee of only 6 degrees with some pain"; (2) "stiffness in his hands and difficulty holding objects"; (3) prior evaluations for "chest pains"; and (4) "respiratory problems and arthritis." Def.'s Sentencing Mem. at 3. Although the district judge told Brooke that "I recognize I have discretion" to grant the requested departure, Tr. at 22, he declined to do so and sentenced the defendant to 60 months' imprisonment.

## II

In the ordinary case, a district court must impose a sentence falling within the applicable guideline range. *See* 18 U.S.C. § 3553(b); *Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 2043–44, 135 L.Ed.2d 392 (1996). A court may depart from the applicable range, however, if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a

degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). According to the United States Sentencing Commission, the two departure factors at issue here, age and physical condition, are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.1 (age); U.S.S.G. § 5H1.4 (physical condition). Under the taxonomy set forth by the Supreme Court in *Koon*, such factors are termed "discouraged factors." *Koon*, 518 U.S. at 95, 116 S.Ct. at 2045. As the Court explained, where the departure factor at issue is a discouraged factor, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* at 96, 116 S.Ct. at 2045.[1]

Our standard for reviewing a district court's refusal to depart downward from an applicable guideline range is by now well settled. We may review such a decision only to determine whether the sentence was imposed "in violation of law" or "as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(1)-(2); *see United States v. Greenfield*, 244 F.3d 158, 160 (D.C.Cir. 2001); *United States v. Leandre*, 132 F.3d 796, 800 (D.C.Cir.1998); *United States v. Sammoury*, 74 F.3d 1341, 1343 (D.C.Cir. 1996). In so doing, we must "accept the findings of fact of the district court unless they are clearly erroneous," and "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see Greenfield*, 244 F.3d at 160.

---

1. *See* U.S.S.G. ch. 5, pt. H, intro. comment. ("[A]lthough these factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, they may be relevant to this determination in exceptional cases."); *see also* U.S.S.G. § 5K2.0.

A district court's refusal to depart based on the mistaken belief that it lacks authority to do so constitutes an incorrect application of the guidelines. *Sammoury,* 74 F.3d at 1344. So, too, does a refusal to depart based on a clearly erroneous factual finding that a circumstance warranting departure is absent. *Id.* at 1344–45. However, "if the judge correctly understood the Sentencing Guidelines and the evidence, knew he could depart, and yet decided to stick to the guideline range, there has been no incorrect application of the Guidelines ... and so the resulting sentence cannot be set aside." *Id.* at 1343. In short, a "court's discretionary decision that the particular circumstances of a given case do not warrant a departure ... is not reviewable." *United States v. Pinnick,* 47 F.3d 434, 439 (D.C.Cir.1995); *see United States v. Draffin,* 286 F.3d 606, 609 (D.C.Cir.2002); *United States v. Washington,* 106 F.3d 983, 1016 (D.C.Cir.1997).

### III

Brooke contends that the district court erred by failing to grant him a departure under policy statements contained in two sections of the Sentencing Commission's GUIDELINES MANUAL, § 5H1.1 and § 5H1.4. Cognizant of our standard of appellate review, the defendant contends that the court failed to grant a departure because it misunderstood the guidelines and its authority to depart under those sections, and because it made a clear error of fact regarding his physical condition. We find to the contrary: The district court correctly understood the guidelines, expressly rec-

ognized its discretion to depart, Tr. at 22, and made no clear factual errors.

### A

The first section cited by the defendant is § 5H1.1, which is entitled "Age" and provides:

Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. *Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.* Physical condition, which may be related to age, is addressed at § 5H1.4....

U.S.S.G. § 5H1.1 (emphasis added). The district court restated this section verbatim during the sentencing hearing and then proceeded to consider each of the three elements italicized above. Tr. at 18–19.

There was, of course, no question that the 82-year-old defendant was "elderly." Nor did the court dispute that the defendant was "infirm."[2] To the contrary, the court stated that "I have gone through the medical records which you have attached, as I've said, as to his age and his disabilities, and I think his disabilities are there." Tr. at 7. Further, the court accepted all of Brooke's specific representations regarding his disabilities:

The medical records here indicated ... that you have a badly swollen right

---

**2.** Referring to both § 5H1.1 and § 5H1.4, the court did state that the "case law indicates that these sections do not permit a downward departure for elderly defendants who are in good health." Tr. at 19. Contrary to the defendant's suggestion, however, the court was not implying that Brooke was "in good health," but merely (and correctly) reciting the elements of the two guideline sections. Indeed, the court's statement was little more than a paraphrase of the defendant's own sentencing memorandum. *See, e.g.,* Def.'s Sentencing Mem. at 2 ("§ 5H1.1 does not permit a downward departure for an elderly defendant in good health....").

knee; that it's been indicated that it's causing you terrible pain and suffering that has to be drained constantly. You also are getting arthritis in your hands and other joints. You have difficulty holding objects. You've had respiratory problems and chest pain.

Tr. at 19–20.

Nor did the court hold that these medical infirmities were insufficient to permit a departure under § 5H1.1.[3] Rather, the problem the court discerned was with the third element of § 5H1.1: that an alternative "form of punishment such as home confinement ... be equally efficient as ... incarceration." The court concluded that home confinement would not be effective in restraining the defendant's criminal conduct because Brooke had a history of drug dealing in his home: "[I]n your apartment, at least on two separate occasions, you've been arrested and convicted of dealing drugs...." Tr. at 20. And whether we regard the court's conclusion about relative effectiveness as one of fact, which we may set aside only for clear error, or simply as the court's rationale for declining to exercise its discretion in Brooke's favor, which we may not review at all, we have no warrant to reverse it. *See Sammoury*, 74 F.3d at 1344; *Pinnick*, 47 F.3d at 439.

■ Brooke also contends that the district court erred in declining to depart under § 5H1.4, which applies to departures based on "Physical Condition" and states in relevant part:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, *an extraordinary physical impairment may be a reason to impose a sentence below the guideline range*; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4 (emphasis added). As with § 5H1.1, the court read the section verbatim at the sentencing hearing and explained why it did not regard the section as warranting departure. Tr. at 19. This time, however, the court concluded that Brooke's impairment was insufficient to qualify under the section. Unlike § 5H1.1, § 5H1.4 requires not just "infirm[ity]" but "extraordinary physical impairment," and while the court did not dispute the underlying facts of Brooke's medical condition, it did not regard them as reflecting an extraordinary impairment. Tr. at 7, 19, 21. Although we are uncertain whether the district court intended this conclusion as a finding of fact (i.e., that Brooke's impairment was not extraordinary by comparison to that of many other defendants),[4] or as

**3.** At one point in the hearing, the court did refer to a requirement of "extraordinary" physical impairment, and found that Brooke did not meet it. Tr. at 19; *see id.* at 7, 21. The court's reference, however, was not to § 5H1.1 but to § 5H1.4, which does contain the word "extraordinary" and is discussed in the text below. At another point, the court stated that Brooke's infirmity did not rise to the "level under the case law for departing because of serious physical impairments that would be exacerbated by incarceration...." Tr. at 21. Again, this was not a reference to § 5H1.1, but rather to a potential ground for departure set forth in *United States v. Baron,*

914 F.Supp. 660, 662–63 (D.Mass.1995), and discussed in Part III.B below.

**4.** The Supreme Court has suggested that a determination based on such a comparison is one of fact, or is at least closely intertwined with factual considerations. *Cf. Koon,* 518 U.S. at 100, 116 S.Ct. at 2047 ("What the district court must determine is whether the misconduct that occurred in the particular instance suffices to make the case atypical. The answer is apt to vary depending on, for instance, the severity of the conduct, its timing, and the disruption it causes. These considerations are factual matters."). But even if

an expression of its rationale for declining to exercise discretion (i.e., that the impairment was insufficiently extraordinary to move the court to exercise its discretion in Brooke's favor), our disposition of this appeal is again unaffected. If the former, the district court's conclusion was not clearly erroneous in light of the medical evidence of record; if the latter, the court's conclusion is unreviewable.

## B

■ In addition to the errors Brooke alleges concerning §§ 5H1.1 and 5H1.4, he suggests that the district court further erred in thinking itself without discretion to depart unless the specific elements listed in those sections were satisfied. Indeed, the court did repeatedly state that it did not believe a departure was warranted under those sections.[5] But the reason that the court's statements were couched in terms of the elements of those sections was that the court was responding to the defendant's own sentencing memorandum, which relied on those sections as the grounds for the requested departure. *See* Def.'s Sentencing Mem. at 2. Accordingly, the court's conclusion that departure was unwarranted "under these sections" expressed nothing more than its rejection of defendant's request premised on those sections. It did not reflect a belief that those

were the only possible grounds for departure.

The court's express consideration of additional grounds for departure belies the claim that it thought itself constrained by the two guideline sections. For example, exploring a potential ground for departure not mentioned in § 5H1.4, the court suggested that "perhaps" it could "depart where there is serious physical impairment[ ] that can be exacerbated by incarceration and cannot be adequately treated by the Federal Bureau of Prisons," citing a case from the District of Massachusetts. Tr. at 19 (citing *United States v. Baron*, 914 F.Supp. 660 (D.Mass.1995)). In the end, the court declined to depart on that ground because it concluded that the Bureau of Prisons could adequately treat Brooke's maladies "at least . . . as well as any other place can," Tr. at 21, a factual finding that is not contradicted by anything in the record.

The court also considered another rationale for departure not contained in the cited guideline sections: that Brooke would be vulnerable to physical abuse in prison. The district court noted this court's holding, in *United States v. Graham*, 83 F.3d 1466 (D.C.Cir.1996), that "to qualify for a downward departure" on that ground, "a defendant's vulnerability must be so extreme as to substantially affect the severity of the confinement, such as where

such a comparison were instead regarded as an application of the guidelines to the facts, we would still owe the district court "due deference," 18 U.S.C. § 3742(e), which on this kind of question would be substantial. *Cf. Koon*, 518 U.S. at 98, 116 S.Ct. at 2047 ("[W]hether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, [is] . . . determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many

more Guidelines cases than appellate courts do.").

5. For example, the court stated that the "case law indicates that *these sections* do not permit a downward departure for elderly defendants who are in good health." Tr. at 19 (emphasis added). In light of the sections' references to a defendant who is "infirm," § 5H1.1, or who has "an extraordinary physical impairment," § 5H1.4, the court's statement is accurate. Indeed, the defendant's own sentencing memorandum made the same point. *See* Def.'s Sentencing Mem. at 2, *quoted supra* note 2.

only solitary confinement can protect the defendant from abuse." *Id.* at 1481; *see also* Def.'s Sentencing Mem. at 4 ("Defendant Brooke acknowledges that this departure is reserved for extraordinary situations...."). Concluding that Brooke was not "so [infirm] or disabled" as to come within the terms of *Graham,* the district court denied a departure on that basis. *See* Tr. at 22. And whether we regard that conclusion as a finding of fact or as an application of the rule of *Graham* to the facts of Brooke's condition, *see generally supra* note 4, we have no cause to overturn it.

The district court went on to consider still two more departure possibilities, neither of which was even mentioned in Brooke's own sentencing memorandum. First, it considered whether the defendant's advanced age alone warranted a departure, concluding that *"in this case,* I do not see age as a reason alone." Tr. at 21 (emphasis added). This was so, the court explained, because the defendant's age did not appear to serve as a deterrent to his continuing criminal conduct: "Even though you're elderly, it's evident that you were a drug dealer and that's what you decided to do when you were 70 years old and have kept it up." *Id.* at 22. The court had set this point out in even greater detail at the outset of the hearing:

> What concerns me regarding his age ... is ... when he was 70 he was convicted of unlawful possession with intent to distribute five grams or more of cocaine base here in this court. And then he was 78 and he was convicted again in Superior Court. My concern is departing ... and letting him just, because of

his age and health concerns, go back to his apartment here, and it seems he goes back to a drug life again. I don't know how I protect society by just letting him out.

Tr. at 8. That explanation, which expressed the district court's rationale for declining to exercise its discretion, is unreviewable by this court.[6]

Finally, the court sua sponte considered whether "an accumulation of all" of the factors present in Brooke's case warranted the exercise of its discretion to depart. Tr. at 22; *see generally* U.S.S.G. § 5K2.0, comment. ("The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' of cases covered by the guidelines...."). Effectively addressing the question in terms of the statutory direction to determine whether factors unconsidered by the Sentencing Commission "should result in a sentence different from" that specified by the guidelines, 18 U.S.C. § 3553(b), the court concluded that the defendant's plea bargain had already reduced his sentence to a level the court regarded as appropriate. *See* Tr. at 22. This expression of an additional rationale for refusing to exercise the court's discretion is, once again, unreviewable.

## IV

The district court did not misunderstand the sentencing guidelines or its authority to depart from the applicable guideline range. Nor did it clearly err in finding the

---

**6.** We therefore have no occasion to consider defendant's suggestion that extreme age, even in the absence of infirmities or other considerations, would be sufficient to justify a departure. *Cf. United States v. Goff,* 20 F.3d 918, 921 (8th Cir.1994) (reversing a district court's grant of a departure for a 67-year-old defendant in good health).

facts relevant to a potential departure. The court did conscientiously explain to the defendant its rationale for declining to exercise its discretion in his favor, but that is a decision this court lacks authority to review. Accordingly, the judgment of the district court is

*Affirmed.*