# United States Court of Appeals
## For the First Circuit

No. 01-1853

UNITED STATES,

Appellee,

v.

ALBERTO LUJAN, A/K/A ROBERT LUJAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Randy Olen for appellant.
Peter E. Papps, First Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief for appellee.

March 31, 2003

**STAHL**, <u>**Senior Circuit Judge**</u>. Defendant-appellant Alberto Lujan pled guilty to conspiracy to distribute large quantities of marijuana over an eight-year period. He now challenges the district court's denial of a pretrial motion to dismiss a superseding indictment and to suppress certain evidence, as well as its refusal to depart downward pursuant to U.S.S.G. § 5H1.4 and its assessment of a $1,000,000 fine. He also challenges his sentence on the ground that the government breached the plea agreement by opposing his request for a downward departure. Finding his arguments unavailing, we affirm his conviction, sentence, and fine.

**I**

We refer to the facts set forth in the presentence investigation report ("PSR"), the plea and sentencing transcripts, and other materials before the district court. <u>United States</u> v. <u>Rizzo</u>, 121 F.3d 794, 795 (1st Cir. 1997). From 1985 to 1993, Lujan and other co-conspirators engaged in a large-scale marijuana distribution operation, which was responsible for distributing marijuana throughout Arizona, Michigan, New Hampshire, and New York. According to the PSR, Lujan was the organizer of the conspiracy and was responsible for distributing approximately 54,700 pounds of marijuana. Forty-two thousand pounds of the 54,700 pound total alone yielded approximately $62,400,000 in revenue.

In 1992, as indictments were handed down, houses searched, and co-conspirators arrested, the conspiracy began to unravel. Presumably sensing the conspiracy's impending downfall, on September 30, 1992, Lujan negotiated an "Agreement Not To Prosecute," which included a limited immunity agreement, with the United States Attorney for the Eastern District of Michigan in exchange for his cooperation.[1]

The following month a grand jury in the District of New Hampshire returned a two-count indictment, charging Lujan with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848, and conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The government alleged that law enforcement officials in New Hampshire had been investigating the conspiracy and Lujan for a considerable time before Lujan made his arrangement with the Eastern District of Michigan and that they were unaware of that deal when the indictment was returned. On August 26, 1993, a three-count superseding indictment was returned, which added an additional count of engaging in a continuing criminal enterprise. Despite the success of federal authorities in bringing down his co-conspirators, Lujan remained a fugitive until

---

[1]The government theorizes that Lujan chose Michigan, where there was no pending indictment, because he hoped to enter a preemptive deal with a neutral jurisdiction, which might bind other jurisdictions, such as New Hampshire.

his arrest by the United States Marshals Service in Michigan in June of 1998.

Lujan filed a motion to dismiss the superseding indictment, or, alternatively, to suppress any evidence derived from statements that he made to federal authorities in the Eastern District of Michigan pursuant to the above-mentioned immunity agreement. On February 15, 2001, the district court denied the motion, holding (1) that the government met its heavy burden under Kastigar v. United States, 406 U.S. 441, 453 (1972), of proving that the evidence it would introduce at trial was not derived either directly or indirectly from immunized statements, and, alternatively, (2) that Lujan had affirmatively waived any and all Kastigar claims by having entered into a written waiver agreement with the District of New Hampshire in the summer of 1998.[2]

---

[2]The "Waiver of Kastigar Claims" executed by Lujan provided, in pertinent part:

> Albert Lujan, hereby authorizes and requests that the investigators and prosecutors in New Hampshire seek out and obtain any and all information concerning Mr. Lujan in the possession of authorities in the Eastern District of Michigan, or which was generated in the course of or because of the Agreement Not to Prosecute. The defendant hereby waives any and all rights, protections or claims which he may have concerning the sharing of this information, and expressly relinquishes any claim he might have had for relief under the doctrine of Kastigar v. United States and its progeny. Accordingly, the District of New Hampshire may make free use of any and all derivative evidentiary leads obtained from or

-4-

Faced with this adverse ruling, on February 27, 2001, Lujan pled guilty to a one-count information, charging him with conspiracy to distribute in excess of 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Relevant for our purposes, the agreement contemplated that Lujan would seek a downward departure, pursuant to U.S.S.G. § 5H1.4 ("[A]n extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range."). For its part, the government agreed not to oppose such a request, so long as "[Lujan] provide[d] the United States with the written opinion of a physician . . . which unequivocally states that [Lujan's] medical condition will result in a significant reduction of his life expectancy." Lujan reserved no issues for appeal. After the usual Fed. R. Crim. P. 11 proceedings, the district court accepted Lujan's plea and set sentencing for May 31, 2001.

At the sentencing hearing, Lujan sought a section 5H1.4 departure, which, despite the plea agreement, the government opposed. The district court denied the request, reasoning that although it understood its authority to depart, it did not think the facts of this case warranted a departure. In any event, the court accepted the government's recommendation to sentence Lujan at the low end of the applicable range and sentenced him to 292

---

pursuant to the Agreement Not to Prosecute.

months' imprisonment with five years' supervised release. The court also assessed a $1,000,000 fine.

## II

Lujan's first challenge warrants little discussion. He attacks the district court's denial of his motion to dismiss the superseding indictment, or, alternatively, to suppress any evidence derived from his immunized statements made pursuant to the limited immunity agreement. By entering an unconditional guilty plea,[3] Lujan waived any and all nonjurisdictional challenges to his conviction, including constitutional ones. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); United States v. Martinez-Martinez, 69 F.3d 1215, 1224 (1st Cir. 1995). Lujan certainly does not maintain, nor could he, that his Kastigar claim calls into question the jurisdiction of the federal district court. Cf. United States v. Codero, 42 F.3d 697, 699 (1st Cir. 1994) (rejecting defendant's claim that his challenge to a

---

[3]Lujan does not challenge the validity of his guilty plea or the sufficiency of the Rule 11 proceedings.

suppression motion was a jurisdictional one).  This ends his challenge.[4]

## III

## A.  District Court's Refusal to Depart Downward

Lujan next seeks review of the district court's decision not to depart downward pursuant to U.S.S.G. § 5H1.4.  That section provides that although the defendant's physical condition is not ordinarily relevant in determining whether to depart downward, "an extraordinary physical impairment may be a reason to impose a sentence below the applicable Guideline range . . . ."  At sentencing, Lujan presented evidence that he had only one remaining kidney as a result of an emergency nephrectomy performed in 1985, suffered from cirrhosis and calcified arteries, and had a demonstrated family history of heart disease.  Lujan produced medical records and letters from doctors to support his request.  Notably missing from the record, however, was any evidence suggesting that the Bureau of Prisons would be unable to provide the appropriate degree of treatment for him or that incarceration

---

[4]Lujan was free, "with the approval of the court and the consent of the government, . . . [to] enter a conditional plea of guilty . . ., reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion."  Fed. R. Crim. P. 11(a)(2); see United States v. Caraballo-Cruz, 52 F.3d 390, 392 (1st Cir. 1995) (holding that the waiver of claims is overcome when the parties enter a conditional plea agreement that expressly preserves the defendant's right to raise an issue on appeal.).  He declined this course and chose instead to waive his Kastigar claim by entering an unconditional plea of guilty.

itself would aggravate his conditions.  See, e.g., United States v. LeBlanc, 24 F.3d 340, 349-50 (1st Cir. 1994).  In any event, he contends that these conditions, when taken together, constitute an "extraordinary physical impairment" and that the district court thus should have departed downward.

The government opposed the departure by producing a doctor, who, after reviewing Lujan's medical records, testified that he found no indication of heart disease and that, even if Lujan had cirrhosis, Lujan's medical records indicated that his liver was "well compensated and not compromised" in any way.  The doctor also testified that although a person can live a normal life on just one kidney, that person must take precautions to avoid damage to the remaining kidney.

Our review of a district court's refusal to depart downward is extremely limited.  Under 18 U.S.C. § 3742(a), an appellate court has jurisdiction to determine, inter alia, whether a sentence was imposed "in violation of law" or by "an incorrect application of the sentencing Guidelines."  We have read this section narrowly to mean that an appellate court lacks jurisdiction to review a refusal to depart where the district court plainly understood it had the legal authority to do so but found that the circumstances of the case were not sufficiently unusual--or in the

section 5H1.4 context, "extraordinary"--to warrant a departure.[5]

United States v. Saldana, 107 F.3d 100, 102-03 (1st Cir. 1997); LeBlanc, 24 F.3d at 347-49. However, appellate jurisdiction will attach where the court's refusal was premised on the mistaken belief that it lacked the legal authority to depart under the Guidelines. United States v. Ahlers, 305 F.3d 54, 56 (1st Cir. 2002).[6] The district court's understanding of its legal authority is subject to plenary review.[7] Id.

---

[5]By contrast, a district court's grant of a downward departure is subject to review for abuse of discretion. United States v. Vasquez, 279 F.3d 77, 79 (1st Cir. 2002) (distinguishing between review of district court's decision to grant and to deny a downward departure).

[6]In such a case, the sentence would be imposed in violation of law and would be a result of a misapplication of the Guidelines. See 18 U.S.C. § 3742(a).

[7]We recognize that at least five of our sister circuits have held that where the district court's belief that it lacked the authority to depart was premised on a finding of fact that the defendant did not suffer an "extraordinary physical impairment," the predicate finding of fact is reviewed for clear error. See, e.g., United States v. Brooke, 308 F.3d 17, 20-22 (D.C. Cir. 2002); United States v. McQuilkin, 97 F.3d 723, 730 (3d Cir. 1996); United States v. Rabins, 63 F.3d 721, 728 (8th Cir. 1995); United States v. Fisher, 55 F.3d 481, 483-85 (10th Cir. 1995); United States v. Martinez-Guerrero, 987 F.2d 618, 620 (9th Cir. 1993); cf. 18 U.S.C. § 3742(e) ("The court of appeals . . . shall accept the findings of fact of the district court unless they are clearly erroneous . . . ."). We have not yet taken a stance on the issue, see, e.g., United States v. Rivera-Maldonado, 194 F.3d 224, 236 n.16 (1st Cir. 1999) ("Insofar as the 'extraordinary physical impairment' determination presented a factual issue for the sentencing court, we review only for clear error.") (citation omitted), but leave for another day whether and to what extent review is available.

Lujan argues that the district court imposed the sentence in violation of law because it completely abrogated its responsibility to apply the Guideline to his case. To support this claim, he points to the absence of express findings in the record indicating that the district court "ma[de] a refined assessment of the many facts bearing on the outcome," or that it compared the facts of this case with other Guideline cases. Koon v. United States, 518 U.S. 81, 98 (1996). It is well established in this circuit, however, that the district court is not required to use any magic words with respect to its application of the Guidelines. Rizzo, 121 F.3d at 799-800. Instead, "we consider the totality of the record and the sentencing court's actions as reflected therein," United States v. Morrison, 46 F.3d 127, 130 (1st Cir. 1995), and assume that "if a district court desired to depart but thought this course forbidden by explicit guideline language, [it] would . . . cast its refusal in these terms," Rizzo, 121 F.3d at 799 (citations and internal quotation marks omitted). See also United States v. Hilton, 946 F.2d 955, 958 (1st Cir. 1991) ("We think it is unrealistic to expect that busy trial judges, ruling from the bench, will be infinitely precise in their choice of language."). Furthermore, arguable ambiguity in the record over whether the court understood its authority to depart is normally insufficient to render the decision not to depart appealable. Rizzo, 121 F.3d at 799-800. Indeed, in United States v. Lombardi,

-10-

5 F.3d 568, 571 (1st Cir. 1993), we explained that section 5H1.4 "[d]epartures . . . are comparatively rare, . . . and in the ordinary case no explanation for declining to do so is required."[8]

In any event, there is no ambiguity on this record. During the sentencing hearing, the district judge explained:

> I recognize my authority to depart downward, but I'm not persuaded by the evidence presented--or the argument presented that the defendant's physical--alleged physical impairment or alleged medical condition warrants--or his actual medical condition, for that matter, warrants a downward departure in these circumstances and, therefore, I decline to exercise that authority or my discretion to depart downward.

Later in the hearing, it went on to explain that it was "not persuaded that [Lujan] suffer[ed] from any serious medical conditions. . . . [and that it was] persuaded that there are a lot of people with one kidney." It also found that "[Lujan was] not in immediate danger of death and [did not] have serious disabilities as far as [it could] tell, absent having two kidneys." Finally, the district court judge stated that his own family had a history of heart disease and that he thought it was "fairly common." There is simply nothing in the record to suggest that the district court believed that it lacked the legal authority to depart under

---

[8]We recognize that the Tenth Circuit follows a different course by requiring the district court to set forth its factual finding of whether the physical or mental condition is "extraordinary" and its reasoning for refusing to depart on the record. See Fisher, 55 F.3d at 485. This is not the law of the First Circuit. See Lombardi, 5 F.3d at 571.

section 5H1.4. Instead, the court reviewed the circumstances, understood that it had the discretion to depart, and concluded that the circumstances were not sufficiently extraordinary to warrant a departure. This was a judgment call, one not reviewable on appeal.[9]

## B.  Government's Opposition to § 5H1.4 Departure

Lujan also insists that he is entitled to a new sentencing hearing on the ground that the government breached the plea agreement. The government, of course, is obligated to fulfill its end of the bargain, and its failure to do so may support vacating a defendant's sentence. United States v. Riggs, 287 F.3d 221, 224-26 (1st Cir. 2002); see also Santobello v. New York, 404 U.S. 257, 262 (1971) ("When a plea rests in any significant degree on a promise or agreement of a prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). As in this case, where the defendant failed to bring the purported breach to the attention of the district court, we review for plain error only. United States v. Giraud-Pineiro, 269

---

[9]We note that if Lujan's condition deteriorates, the Director of the Bureau of Prisons may move the district court to make a sentence reduction under 18 U.S.C. § 3582(c)(1).

F.3d 23 (1st Cir. 2001).[10]  Given that the government did not breach

the agreement, we find no error.

We start with the language of the agreement, interpreting

it under normal contract-law principles.  United States v. Garcia,

954 F.2d 12, 17 (1st Cir. 1992).  The agreement provides, in

relevant part:

> The United States . . . agrees that it
> will not oppose defendant's request if
> defendant provides the United States with the
> written opinion of a physician, supported by
> competent and sufficient medical records,
> which unequivocally states that defendant's
> medical condition will result in a significant
> reduction of his life expectancy.
> Defendant agrees that if he fails to
> provide such information, or if such
> information fails to establish that
> defendant's medical condition will result in a
> significant reduction of his life expectancy,
> the United States will remain free to oppose
> the request for a downward departure. . . .

(Emphasis added).  Lujan does not dispute that the language, "if

defendant provides the United States with the written opinion of a

physician," especially read in light of the second paragraph quoted

above, constitutes a condition that must be satisfied before the

government's obligation not to oppose arises.  Instead, he argues

that he satisfied that condition.  We disagree.

---

[10]To establish plain error, a defendant must demonstrate that
(1) there was error that (2) was plain, (3) affected substantial
rights, and (4) seriously affected the fairness, integrity, or
public reputation of judicial proceedings.  Johnson v. United
States, 520 U.S. 461, 466-67 (1997); United States v. Olano, 507
U.S. 725, 732 (1993); Riggs, 287 F.3d at 224.

Lujan provided various medical records, dating from 1985, and letters from two physicians, Dr. Karsch, who performed the nephrectomy, and Dr. Hirsch, who treated Lujan in the 1970s. Neither "written opinion . . . unequivocally state[s] that [Lujan's] medical condition[s] will result in a significant reduction of his life expectancy." In fact, Dr. Karsch's letter offered no opinion whatsoever about Lujan's life expectancy.[11] It simply stated that Dr. Karsch had removed Lujan's kidney and related Lujan's mother's statements that he allegedly suffered from cirrhosis, calcified arteries, constipation, decreased hearing acuity, and a demonstrated family history of heart disease.

Dr. Hirsch's letter fares no better for Lujan. It noted the family history of heart disease, the nephrectomy, and that, "to [his] recollection, [Lujan] had liver disease in the 1970s, the last time [he] saw him professionally." Admittedly, the letter also stated that "[i]f the remaining kidney were in any way damaged, [Lujan's] life expectancy would be severely shortened" and that "[a]ny or all of these problems could shorten his life expectancy." (Emphasis added). But these statements are a far cry from "unequivocal[] state[ments] that [his] medical condition[s]

---

[11]Even Lujan recognized the limited utility of Dr. Karsch's letter: at the sentencing hearing he conceded that the letter does not "directly . . . suggest . . . that it's Dr. Karsch's medical opinion that removal of the kidney in and of itself would result in a shortening of his life expectancy . . . ."

will <u>result</u> in a significant reduction of his life expectancy."
The government simply did not breach the plea agreement.

## C. District Court's Imposition of a $1,000,000 Fine

Finally, Lujan attacks the district court's assessment of a $1,000,000 fine, arguing that the court failed to consider the criteria set forth in U.S.S.G. § 5E1.2(d) and 18 U.S.C. § 3572(a). Because he did not raise this challenge below, we review for plain error. <u>See</u> <u>United States</u> v. <u>Rowe</u>, 268 F.3d 34, 38 (1st Cir. 2001).

The Sentencing Guidelines require a district court to "impose a fine in all cases, except where the defendant establishes that he is unable to pay and he is unlikely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The defendant bears the burden of proving that his case warrants exception. <u>Rowe</u>, 268 F.3d. at 38. We have made clear that a "present lack of assets or even a negative net worth will not preclude imposition of a fine unless a defendant also demonstrates that he lacks the ability to earn and to pay a fine in the future." <u>Id.</u> When assessing a fine and its conditions, the district court must consider, among other things, the defendant's income and financial condition, the burden the fine will place on the defendant and his dependents, the need to deprive the defendant of ill-gotten gains, and the expected costs of imprisonment, supervised release, and/or probation. 18 U.S.C. § 3572(a); <u>see</u> <u>also</u> U.S.S.G. § 5E1.2(d). The district court, however, need not make express findings with respect to the

-15-

statutory criteria.  United States v. Merric, 166 F.3d 406, 408 (1st Cir. 1999); United States v. Peppe, 80 F.3d 19, 22 (1st Cir. 1996).  Indeed, so long as adequate record evidence was presented to the district court, an appellate court will presume that the district court considered the statutory criteria.  Merric, 166 F.3d at 408.

We are satisfied that the record adequately supports the district court's ruling.  The PSR, which the district court adopted, contained sufficient information for the district court to consider Lujan's ability to pay, the likely impact on his dependents, and the expected costs of imprisonment and supervision. We stop only briefly to note that, according to the PSR, the marijuana Lujan distributed in 1991, 42,000 pounds, alone yielded approximately $62,400,000 in revenue, which the probation officer stated was a conservative estimate.  Given Lujan's failure to present evidence that he was subject to extensive seizures or that he had no access to possible hidden drug proceeds, the district court could reasonably conclude that this money went somewhere and that Lujan would have access to it upon his release.  Moreover, the PSR noted that a confidential informant told police that Lujan owned houses in Arizona, California, and Mexico.  Despite these factual representations, Lujan nonetheless decided not to provide the probation officer, or the district court for that matter, any evidence indicating his inability to pay the maximum statutory fine

of $4,000,000.  Because of this failure, the PSR assumed that he would be able to pay the maximum fine.  Cf. United States v. Torres-Otero, 232 F.3d 24, 32 (1st Cir. 2000) ("[I]n cases where a defendant fails to rebut factual assertions in a PSR, the district court is justified in relying on those assertions.").  Given the district court's adoption of the PSR's findings and Lujan's utter failure to present any evidence concerning his ability to pay, we find no plain error.

**We affirm** Lujan's conviction, sentence, and fine.