**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 08-1425

AUSTIN SMITH,

Petitioner, Appellant,

v.

MICHAEL THOMPSON,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Stahl, and Howard, Circuit Judges.

Kenneth G. Littman, by Appointment of the Court, for appellant.

Argiro Kosmetatos, Assistant Attorney General, with whom Martha Coakley, Attorney General, and James J. Arguin, Assistant Attorney General were on brief for appellee.

May 11, 2009

**STAHL**, <u>Circuit Judge</u>.    In 1997, Austin Smith was convicted in Massachusetts Superior Court of six counts of sexual assault on a minor and was sentenced to eighteen to twenty years in prison.  After exhausting his state court appeals, Smith brought a habeas petition in federal court, under 28 U.S.C. § 2254, alleging ineffective assistance of counsel at his state court trial.  The district court below denied the habeas petition, adopting in full a magistrate judge's report and recommendation.  After careful review of the record and finding no error, we affirm.

The magistrate judge's detailed report includes a thorough recitation of the facts of the case and we therefore do not recount them in detail here.  Essentially, Smith was convicted of repeatedly sexually assaulting his live-in girlfriend's daughter, Anna Garcia (a pseudonym), when she was five and six years old.  The assaults occurred between December 1993 and May 1995.  Initially, Anna did not tell anyone of the sexual abuse.  In June 1995, Anna's aunt made a report of child abuse and neglect to the Framingham, Massachusetts police department, alleging that Anna and her younger brother (who was the biological son of Anna's mother and Smith) were being <u>physically</u> abused by Smith.  Following up on the report, a Massachusetts Department of Social Services investigator, James Nally, interviewed Anna and she revealed to Nally for the first time that Smith had also <u>sexually</u> abused her.  After the interview and while Nally was still present, Anna then

told her mother of the sexual abuse.  After the Nally interview was over, Anna's mother took Anna to see a pediatrician, Dr. Nancy Rosselot, and Anna described the sexual abuse to her as well.  At some later point, Anna also told her aunt and grandmother what Smith had done to her.

At trial, the prosecution presented three key witnesses, Anna,[1] Nally, and Dr. Rosselot.  Under Massachusetts law at the time, Nally and Dr. Rosselot qualified as "fresh complaint witnesses," meaning that they could testify to "an out-of-court complaint seasonably made by the victim after [the] sexual assault" and such testimony would be "admissible as part of the prosecution's case-in-chief."  Commonwealth v. Licata, 412 Mass. 654, 657 (1992).  In addition, under the law as it stood at that time, "[a] fresh complaint witness [could] testify to the details of acts discussed during a fresh complaint; the acts about which the witness testifie[d], however, must have been testified to by the complainant."  Commonwealth v. Flebotte, 417 Mass. 348, 351 (1994).  The "fresh complaint doctrine" also put a significant limitation on how such evidence could be used by the jury: "Evidence of the complaint is admissible only to corroborate the complainant's testimony; it cannot be presented to establish the truth of the complaint itself."  Licata, 412 Mass. at 657.

---

[1]At the time of trial, Anna was eight years old.  Tragically, she passed away two years after the trial, due to complications from strep throat.

Smith did not present any witnesses at trial. His theory of the case was that Anna had been coached by her mother, aunt, and grandmother to fabricate the sexual abuse allegations because they had an on-going feud with Smith. His trial counsel sought to highlight inconsistencies within Anna's testimony, inconsistencies between her testimony and what she previously told Nally and Dr. Rosselot, and the lack of physical evidence supporting Anna's claim.

Smith's ineffective assistance of counsel claim focuses on four aspects of his counsel's conduct during the trial. First, Smith argues that his trial counsel mishandled Anna's cross-examination by asking her detailed questions about what she told Nally and Dr. Rosselot about Smith's abuse. This line of questioning, presumably intended to uncover inconsistencies, elicited graphic testimony from Anna about the details of Smith's abuse. Second, Smith argues that the cross-examination of Anna was also constitutionally deficient because counsel asked Anna about what she told her mother, aunt, and grandmother about Smith's abuse. Smith says this was prejudicial error because Anna's statements to her relatives about the abuse had not been presented by the government in its case-in-chief, and therefore this line of questioning introduced new and damning fresh complaint testimony that otherwise would not have been before the jury. Third, Smith argues that counsel's cross-examination of Nally and Dr. Rosselot

-4-

was deficient because he repeatedly asked them to describe what Anna had told them about Smith's actions. This elicited further repetitive statements describing in graphic detail Smith's abuse. Fourth, Smith condemns his counsel's failure to request a limiting instruction indicating that Anna's testimony about her out-of-court statements to others could not be used as substantive evidence of the truth of her allegations.

Smith first raised his ineffective assistance claim before the Massachusetts Appeals Court, which affirmed his conviction and denied his motion for a new trial. Thereafter, the Massachusetts Supreme Judicial Court denied Smith's application for leave to obtain further appellate review, leaving the Appeals Court decision as the final state adjudication of the claim. The Appeals Court concluded that Smith's trial counsel's performance "fell measurably below that of the ordinary fallible lawyer," because counsel "repeatedly elicit[ed] corroborative testimony from the victim and other witnesses." Commonwealth v. Smith, No. 99-P-766, 2001 WL 695108, 51 Mass. App. Ct. 1116 (June 20, 2001) (unpublished table decision). However, the court concluded that, on the record as a whole, this deficient representation did not "'cast doubt on the validity of the jury's verdict.'" Id. (quoting Commonwealth v. Peters, 429 Mass. 22, 33 (1999)).

Smith subsequently filed a habeas petition in federal court under 28 U.S.C. § 2254. Agreeing with a magistrate judge's

-5-

report and recommendation, the district court denied the writ, concluding that the Massachusetts Appeals Court did not unreasonably apply the law governing claims of ineffective assistance of counsel. The magistrate report, which was adopted in full by the district court, explained its reasoning as follows:

> Having read the entire trial record, it is just as probable that the jury would have found Anna credible based solely on the testimony which was properly admitted. Put another way, there is not a <u>reasonable</u> probability that the erroneously admitted evidence would have altered the result.
>
> The reason for this conclusion is that although erroneously admitted, the evidence was essentially cumulative. Anna testified that she gave substantially the same recitation of facts to all of the people to whom she reported the abuse. The Court might feel differently if within the evidence which was erroneously admitted, there was some important evidence necessary for conviction or which was particularly weighty in favor of conviction which was not otherwise before the jury in the form of properly admitted evidence. But there is no such evidence.

In other words, the court below denied the writ on prejudice grounds, concluding that the state court did not unreasonably apply the law regarding ineffective assistance given that there was no reasonable probability that without the deficient representation the jury would have found in Smith's favor.

On a petition for a writ of habeas corpus, we review the district court's legal conclusions de novo. <u>Teti</u> v. <u>Bender</u>, 507 F.3d 50, 56 (1st Cir. 2007). We will only grant the writ as to a

-6-

claim adjudicated on the merits in state court if the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1). Smith argues that the state court unreasonably applied federal law regarding ineffective assistance of counsel in finding that his counsel's errors were not prejudicial. We have previously held that a finding of "unreasonable application" requires more than "the mere fact that there was some error or that the state decision was incorrect." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). Indeed, "'some increment of incorrectness beyond error is required.'" Id. (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

A claim of ineffective assistance of counsel requires a showing that, "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). A successful claim under Strickland requires two showings. First, a defendant must show that counsel's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Second, a defendant must show that the deficient performance prejudiced the defense, which "requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.

The Massachusetts Appeals Court correctly applied what has been held to be the functional equivalent of the two-part Strickland test to evaluate Smith's ineffective assistance claim.[2] Because that court found that counsel's performance was indeed constitutionally deficient, we need only examine the court's evaluation of the second prong of Strickland, the prejudice question.  But, because this case reaches us on habeas review, we do not evaluate whether the errors actually prejudiced Smith, but only whether the Appeals Court reached an unreasonable conclusion on the prejudice question.  We hold that it did not, for substantially the reasons highlighted in the magistrate's report.

First, during the cross-examination of Anna by Smith's trial counsel, she was asked about her out-of-court statements to Nally and Dr. Rosselot, as well as to her mother, aunt, and grandmother.  While this line of questioning certainly elicited damning and graphic testimony regarding Smith's actions, it was essentially cumulative of Anna's prior testimony. Anna had already properly testified about her statements to Nally and Dr. Rosselot,

_____

[2]In considering Smith's claim, the Massachusetts Appeals Court applied the Massachusetts standard for ineffective assistance of counsel laid out in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  We have previously held that "'for habeas purposes, Saferian is a functional equivalent of Strickland.'"  Malone v. Clark, 536 F.3d 54, 63 (1st Cir. 2008) (quoting Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002)).

and the statements Anna recounted making to her relatives were not substantially different from those she reported making to Nally and Dr. Rosselot. It is true that trial counsel's questioning permitted Anna to recount the graphic content of these statements several times, and such repetition could, in some cases, be so significant as to undermine a defendant's right to a fair trial. See Dugas v. Coplan, 428 F.3d 317, 335 (1st Cir. 2005) ("Strickland clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced.") (quoting Kubat v. Thieret, 867 F.2d 351, 370 (7th Cir. 1989)). But here, the merely cumulative nature of the erroneously admitted evidence combined with the strength of the prosecution's properly admitted evidence -- the compelling testimony from the young victim and two fresh complaint witnesses -- leads us to conclude that the Appeals Court's determination of 'no prejudice' was not an unreasonable application of Strickland.

Second, as to counsel's cross-examination of Nally and Dr. Rosselot regarding what Anna told them about Smith's actions, we similarly conclude that such testimony was cumulative of the witnesses' primary testimony about their interviews with Anna. Again, the Appeals Court's 'no prejudice' determination was not unreasonable.

Finally, as to counsel's failure to request a limiting instruction regarding the fresh complaint testimony, the Appeals

-9-

Court's determination of 'no prejudice' was not unreasonable given that the trial court instructed the jury on three occasions[3] about the nature of fresh complaint evidence and its limited applicability.

Smith argues that the district court erroneously denied the writ because it failed to recognize the "serious weaknesses" in the prosecution's case.  In other words, he argues that without the improperly admitted evidence, the jury would likely have returned a verdict of acquittal, meaning his counsel's errors did indeed cause him prejudice.  However, the supposed "weaknesses" that Smith points out -- the lack of physical evidence of sexual abuse, and some very minor inconsistencies in Anna's recounting of Smith's abuse -- are not significant when weighed against the detailed and generally consistent testimony of Anna, Nally, and Dr. Rosselot. We agree with the court below that "there is no reasonable probability the result would have been different" had the jury not heard the improperly admitted evidence.

For the foregoing reasons we **affirm** the district court's denial of the writ of habeas corpus.

---

[3]The court gave these limiting instructions prior to the testimony of Nally and Dr. Rosselot and during the court's final instructions to the jury.